Lowene R. CLEMENTE, Plaintiff,

v.

UNITED STATES of America; United States Air Force, a military department of the United States of America, with Hans M. Mark, Secretary; Ronald J. Bishop, Jr., Harold L. Pray, Charles L. Brower, Phillip G. Seneschal, Harry W. Johnstone, and Jeffrey W. Cook, individually and as officers and/or employees of the United States Air Force, Defendants.

No. CV 80-5746-AAH.

United States District Court,
C.D. California.

Aug. 12, 1983.

See also D.C., 488 F.Supp. 854; 9 Cir., 667 F.2d 1030.

Hatch & Parent by S. Timothy Buynak, Jr., and Thomas D. Wise, Santa Barbara, Cal., for plaintiff.

Stephen S. Trott, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Div. by and through Peter R. Osinoff and Kathryn W. Tate, Asst. U.S. Attys., Los Angeles, Cal., for defendants.

## DECISION

HAUK, District Judge.

This matter came on for nonjury trial on May 23, 1983, and continued thereafter for 19 days until June 21, 1983, whereupon argument was heard. Thereafter, the Court took the matter under consideration and submission.

Plaintiff is a White Caucasion citizen of the United States who, at all times herein mentioned, was and now is employed as a General Schedule (hereafter "GS") civil service employee at Vandenberg Air Force Base, California. Her positions have been primarily in the computer and data automation fields. By this action plaintiff seeks two types of relief: *First,* equitable relief flowing from alleged employment discrimination based on race in connection with a reduction in force (hereafter "RIF") that was effective on July 17, 1977. It is also alleged that reprisal discrimination occurred as a result of the filing of a "RIF" appeal. These claims are brought under 42 U.S.C. § 2000e–16 (Title VII of the Civil Rights Act of 1964, as amended) and 28 U.S.C. § 1331.

*Secondly,* and in addition to the above claims, plaintiff contends that she is entitled to damages for the alleged violation of her constitutional right to due process arising out of the defendants' failure to fully process her claims after Judgment of this Court remanding to the Air Force all proceedings on April 30, 1980. The jurisdictional support for this claim is also 28 U.S.C. § 1331.

The factual basis of this action is extremely complex and may be effectively analyzed only by focusing on three relevant time periods.

## I

### FACTS PRIOR TO THE JULY 17, 1977 RIF

Plaintiff has been a Civil Servant of the Federal Government since 1958 and has been assigned to Vandenberg Air Force Base, California since 1965. In 1968, plain-

tiff was promoted to a GS–7, Computer Operator position in Base Supply. In 1971, this position was downgraded to a GS–6, Step 9, as a result of a base-wide classification downgrade for all computer operators. On December 8, 1974, plaintiff was promoted to the position of Electronic Accounting Machine (hereafter "EAM") Project Planner, GS–362–07, with the 6596th Instrumentation Squadron, Operations Support Branch. Her grade level was that of a GS–7, Step 8. Following this promotion, plaintiff performed well in the opinion of her superiors until the beginning of 1976.

In 1976, plaintiff's immediate supervisors were changed and replaced by Black individuals. Thereafter, plaintiff alleges, these individuals conspired and attempted to undermine plaintiff and have her removed from her position. It is contended that this removal from office was effectuated through a RIF, following a period of tension between plaintiff and her new superiors. The RIF was requested on April 13, 1977 by Master Sergeant Bruce Daniels, a Black. In anticipation of this action, plaintiff filed a telegram appeal with the Civil Service Commission on April 8, 1977. This appeal was dismissed on June 7, 1977, as being premature. Thereafter, plaintiff retained Leonard A. Newton, Esq., an attorney in Santa Maria, California, to assist in the processing of her complaint. Newton advised plaintiff not to communicate with Air Force personnel and indicated that he would assume responsibility for the processing of her complaint. Plaintiff testified that after retaining Newton and receiving his advice, she "left the matter fully in his hands."

The above-mentioned RIF was actuated on May 12, 1977, and upon plaintiff's acceptance of the only alternative position offered, she was transferred into a temporary position at the Base Legal Office. She remained at this position until July 17, 1977, the effective date of the RIF, at which time she was placed in her present position as a Computer Operator, GS–6, Step 10. On this same day Newton sent a telegram to the Federal Employee Appeals Authority (hereafter "FEAA") appealing the RIF action,

stating that the RIF was the consequence of "inverse racial discrimination and personality dislikes on the part of [plaintiff's] superiors." In addition to this telegram, Newton sent a letter to the FEAA charging that the plaintiff's downgrade was the "result of an artificially created reduction in force."

## II

### FACTS SUBSEQUENT TO THE RIF

On July 18, 1977, the FEAA corresponded with Civilian Personnel Officer William Coady of Vandenberg Air Force Base indicating that two alternative methods of appeal were available to process plaintiff's complaint, these methods being set forth in Part 713 and Part 351 of the Civil Service Commission's Regulations. The FEAA requested the Civilian Personnel Office to secure plaintiff's election to process under one of these regulations "in writing," and requested it to inform plaintiff of certain rights she had and the method of processing under each regulation. Plaintiff's written election of the method of processing was to be secured within ten days of receipt of the July 18, 1977 letter to the Civilian Personnel Office. On July 26, 1977, Civilian Personnel Officer Coady forwarded the July 18, 1977 letter of the FEAA to plaintiff, requesting her to make an election as to the procedure under which she intended to proceed and admonishing her that "further action on the appeal is delayed until your choice of procedures is provided to us in writing." At trial, plaintiff testified that she received Mr. Coady's letter with the FEAA letter attached. She noted that Newton had received a copy of the FEAA letter. Thereafter plaintiff communicated with Newton who advised her not to respond to either of these letters and that a resolution of the matter was forthcoming. Plaintiff was not contacted again that year by the Civilian Personnel Office despite her continuing daily work presence at Vandenberg Air Force Base.

Plaintiff was in contact with her attorney, Newton, for the last time in December,

1977, when he assured her that he had filed a complaint and a hearing had been set in the distant future. During the period between July 26, 1977 and February 7, 1978, two requests were made by the FEAA for a response from the Base to its letter of July 18, 1977. On February 7, 1978, Mr. Coady responded to the FEAA stating that no response had been received from the plaintiff to its request that she make an election of procedures. Mr. Coady did not make any further attempt to contact plaintiff or her attorney during this period. On February 21, 1978, the FEAA sent a letter to Newton notifying him that the plaintiff's *"Part 351"* appeal (5 C.F.R., Part 351) had been cancelled. The plaintiff also received this letter.

Plaintiff testified at trial that, because of the repeated assurances of Newton, she interpreted the February 21, 1978 letter from the FEAA to mean that her *"Part 713"* appeal (5 C.F.R., Part 713) was still progressing. However, subsequent to receiving this letter, she became suspicious that her attorney was not handling the case in a proper manner and attempted to contact him. Following numerous attempts to reach Newton by telephone and by mail and receiving no response, plaintiff engaged the services of her present attorney, Timothy S. Buynak, Esq. of Santa Barbara. Thereafter, Buynak did a thorough search of state and federal court records to determine the status of plaintiff's "case," as presumably filed by her first attorney, Newton. Having no success in locating any action filed on behalf of plaintiff, Buynak endeavored to contact Newton by telephone and numerous letters. It was eventually discovered that Newton was the subject of disbarment proceedings before the California State Bar. Newton's attorney in those proceedings was requested to advise Newton to contact Buynak concerning plaintiff's case. On October 2, 1978, portions of plaintiff's file were sent to her new attorney, Buynak, from Newton, together with the information that the only filing that he had made was with the FEAA.

On October 25, 1978, Buynak wrote to both the Civilian Personnel Office at Van-

denberg and the FEAA, informing each that plaintiff assumed her claim was being processed under Part 713. On October 27, 1978, the FEAA responded to this letter stating that the Part 351 appeal had been cancelled and that the Part 713 appeal was to be handled by the employing agency, namely, the U.S. Air Force at Vandenberg Air Force Base. On November 6, 1978, Mr. Coady, the Civilian Personnel Officer at Vandenberg, replied to attorney Buynak's October 25, 1978 letter advising him that no action had been taken on the Part 713 appeal. Four days later Buynak responded to Mr. Coady requesting that the agency begin Part 713 processing because plaintiff was "ready, willing and able to cooperate" with the agency in processing her complaint. Civilian Personnel Officer Van Nice responded, directing that plaintiff should contact Chief EEO Counselor Carol McCool. After this was accomplished by Buynak, Ms. McCool assigned Joanne Tomlinson as counselor in the matter. An initial interview with plaintiff was held by Ms. Tomlinson on February 2, 1979, at which time plaintiff's claims of improper and discriminatory RIF were considered, as well as her secondary complaints of reprisal, and denial of re-employment priority status with respect to job vacancies at Vandenberg Air Force Base. Ms. Tomlinson expressed to plaintiff her belief that the original complaints would not be considered timely and thereby affirmed that she would concentrate on the issue of plaintiff's priority rights. Ultimately, Ms. Tomlinson did recommend placement through plaintiff's priority rights so as to resolve her complaints.

Subsequent to her final interview with Ms. Tomlinson, plaintiff received a "NOTICE OF FINAL INTERVIEW WITH AN EEO COUNSELOR" dated February 23, 1979, which informed her that if she believed she had been discriminated against on the basis of race, color, religion, sex, national origin or age, a discrimination complaint could be filed within 15 days of receipt of the notice. Plaintiff thereafter filed a formal discrimination complaint, also on February 23, 1979. The Air Force, on

March 21, 1979, rejected plaintiff's complaints as being untimely. The Notice Of Final Agency Determination, however, was not sent by certified mail as required by Air Force Regulation (hereafter "AFR") 40–713, Paragraph 23e, October 20, 1975. At trial, plaintiff testified that she never received this notice and thus has validly invoked the jurisdiction of this Court by filing her district court complaint 180 days after the date of lodging a formal administrative complaint with the Air Force.

On October 11, 1979, plaintiff filed her initial complaint in district court, asserting three causes of action and alleging four claims. The claims consisted of (1) reverse racial discrimination; (2) coercive and retaliatory activity for having filed administrative claims; (3) denial of reemployment priority status; and (4) improper RIF. After answering on February 25, 1980, defendants moved to dismiss the action pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1) on the basis that the Court lacked subject matter jurisdiction. This motion was heard on April 21, 1980. Following this hearing, the Court, on April 30, 1980, made and entered its Decision, with Findings Of Fact and Conclusions Of Law, Order, and Judgment, remanding all of plaintiff's claims to the defendants for complete administrative processing, 488 F.Supp. 854. That Decision states in pertinent part:

*DECISION Remanding Proceedings to Air Force (4/30/80)*

\* \* \* \* \* \*

### Findings of Fact

The Court, having considered the pleadings herein, the Certified Administrative Record, the Memoranda and Declarations submitted by both sides, and having heard oral argument of counsel, finds that:

1. Plaintiff's failure to discuss her case with an EEO Counselor is not a jurisdictional defect;

2. Defendants through their personnel at Vandenberg Air Force Base, California, had an affirmative duty to timely refer Plaintiff's complaints to an EEO Counselor for consideration and to fully advise Plain-

tiff of the administrative processing requirement and her rights therein, which Defendants failed to accomplish, although Plaintiff has been consistently employed at Vandenberg Air Force Base, California, since lodging her complaints;

3. Because of these failures by Defendants, Plaintiff's complaints were never accepted and processed administratively in accordance with Defendants' regulations, which processing would aid immensely in the resolution of the difficulties herein considered, which failure constituted and constitute arbitrary, capricious and unreasonable denial of the due process of law rights of Plaintiff.

4. Jurisdiction of this Court to hear discrimination complaints under 42 United States Code § 2000e–16 terminates thirty days after *receipt* of the final notice of agency determination by the Plaintiff; otherwise, this Court has continuing jurisdiction to entertain the judicial complaint herein, beginning 180 days after Plaintiff filed her formal initial charge with the agency;

5. Notice of the final agency determination was never received by Plaintiff. Defendant Air Force, in violation of its own regulations (A.F.R. 40–713, October 20, 1975, Par. 23e.), failed to send to Plaintiff and her representative a written decision by certified mail, return receipt requested. And because 180 days have elapsed between the filing of Plaintiff's formal initial charge and the filing of the complaint herein, this Court has continuing jurisdiction.

\* \* \* \* \* \*

### Conclusions of Law

1. This Court has subject matter jurisdiction over this action.

2. Defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

3. In the interest of justice and fairness to all parties, the complaints of Plaintiff as presented herein should be remanded to the Civilian Personnel Office of Vandenberg Air Force Base, California, for continuous

and diligent administrative processing by the Defendants under applicable Air Force regulations to final determination by the Defendant Air Force and the other said Defendants, all of said processing to be initiated within sixty (60) days of the date of entry of the within Decision and Order.

4. Said processing should be accomplished in strict compliance with applicable Air Force regulations, should involve all stages of administrative processing entailed therein, and should be conducted so as to insure Plaintiff her full rights in said proceedings and a fair adjudication of her complaints.

5. In addition to said rights and privileges afforded by said regulations, Plaintiff should be entitled to be present at all stages of the administrative processing and to be represented thereat by her legal representative.

6. Plaintiff should not be questioned at any time without her legal representative being present and Plaintiff's legal representative should receive copies of all written communications involved in this administrative processing.

7. If the Defendants fail to initiate the said administrative processing within sixty (60) days from the date of entry of the within Decision and Order, or to fully, properly and diligently process said complaints of Plaintiff through all stages to final determination by the Air Force, this Court, upon motion by Plaintiff, should consider reopening of this proceeding herein and granting the relief prayed by the Plaintiff in her complaint on file herein.

8. This proceeding and the complaint herein should be dismissed without prejudice to:

(a) the reopening of this proceeding upon motion of Plaintiff if the Defendants fail to initiate said administrative processing within sixty (60) days from the date of entry of this Decision and Order, or fail to fully, properly, and diligently carry on said processing to final administrative determination in strict compliance with the regulations of Defendant Air Force; or

(b) the filing by Plaintiff of a new complaint for review of the said administrative processing and final determination if Plaintiff is dissatisfied or has good legal cause to complain and seek judicial review of any portion of said administrative proceeding or final determination.

\* \* \* \* \* \*

## ORDER

Let Judgment Be Entered Accordingly.

\* \* \* \* \* \*

JUDGMENT of Remand (4/30/80)

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Defendants' Motion to Dismiss for lack of subject matter jurisdiction is denied.

2. The case and proceeding herein is remanded to Defendant Air Force, and the other Defendants, and particularly to the Civilian Personnel Office of Vandenberg Air Force Base, California, for continuous and diligent administrative processing by Defendants under applicable Air Force regulations to final determination by the Defendant Air Force and the other said Defendants, such processing to be initiated within sixty (60) days of the entry of the aforesaid Decision and Order and the within Judgment.

3. The Court reserves its jurisdiction and right to reopen the within proceeding, upon motion of Plaintiff, if Defendants fail to initiate the said administrative processing within said sixty (60) day period, or fail to fully, properly and diligently process Plaintiff's complaints through all stages to final determination by the Defendant Air Force, in strict compliance with its regulations.

4. This proceeding and the complaint herein are hereby dismissed, but without prejudice to:

(a) the reopening of this proceeding upon motion of Plaintiff if the Defendants fail to initiate said administrative processing within sixty (60) days from the date of entry of this Judgment, or fail to fully, properly and diligently carry on said processing to final administrative de-

termination in strict compliance with the regulations of Defendant Air Force; or

(b) the filing by Plaintiff of a new complaint for review of said administrative processing and final determination if Plaintiff is dissatisfied or has good legal cause to complain and seek judicial review of any portion of said administrative processing or final determination.

\*　　\*　　\*　　\*　　\*　　\*

## III

## FACTS SUBSEQUENT TO THE APRIL 30, 1980 REMAND JUDGMENT

On June 27, 1980, the Defendants, United States of America and the United States Air Force, through Hans M. Mark, Secretary, appealed the order of this Court remanding proceedings for administrative processing and dismissing the complaint without prejudice to reopening and to filing a new complaint. The Ninth Circuit Court of Appeals heard oral argument on this appeal on November 6, 1981 and issued its Unpublished Opinion dismissing the appeal for lack of finality on December 14, 1981. *Clemente v. U.S.A., et al.,* 667 F.2d 1030 (9th Cir.1981). The events occurring after the Remand Judgment of the District Court on April 30, 1980, and after the 9th Circuit Opinion dismissing the appeal therefrom on December 14, 1981, constitute the main bases for plaintiff's constitutional claims of procedural due process denials.

During the interim between the District Court hearing on the Motion to Dismiss on April 21, 1980, and the Remand Judgment on April 30, 1980, plaintiff's attorney Buynak wrote to Civilian Personnel Officer Phillip Seneschal of Vandenberg Air Force Base encouraging the Base to promptly initiate the administrative process in plaintiff's case, requesting full and complete processing of all claims, a proposed schedule for processing, an outline of all processing steps, and copies of all applicable regulations, documents requested by motions to produce and answers to interrogatories. On May 2, 1980, Assistant U.S. Attorney Peter Osinoff, attorney for the defendants, admonished Buynak that all communica-

tions should be sent directly to him. In response to this admonition, Buynak on May 6, 1980, wrote to Osinoff demanding that administrative processing commence immediately and warning that any further delay would evidence a "wilful intent to extend these proceedings and arbitrarily deny the due process rights of [plaintiff]," citing *Owen v. City of Independence, Missouri,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

On May 23, 1980, EEO Counselor Hattie Hall requested the services of an Air Force Investigator, which request began the administrative processing of plaintiff's discrimination claim. Upon receiving notification of that request, Buynak wrote to Osinoff urging that he advise Vandenberg Air Force Base to comply with this Court's April 30, 1980 Judgment. On June 27, 1980, Osinoff authorized Buynak to correspond directly with the Air Force, stating that the United States Attorney's Office "has no involvement in administrative proceedings of the Air Force ...." Osinoff also enclosed a Notice Of Appeal to the Ninth Circuit Court of Appeals and insisted that this Court's April 30, 1980 Judgment was stayed by the same.

Subsequent to the above, plaintiff and Buynak met with Air Force Investigator Harry W. Johnstone, and presented him with an outline of plaintiff's complaints, her administrative processing expectations and a declaration with a substantial number of exhibits attached. At that time Mr. Johnstone stated that he could only process the discrimination claim of plaintiff and none of the other claims. On July 22, 1980, Buynak emphasized his disagreement with the limitations placed on the scope of the investigation and the processing steps undertaken, relying on his belief that such limitations were violative of this Court's Remand Judgment. On July 25, 1980, Mr. Johnstone replied to this correspondence stating that this Court had remanded the discrimination claim only, and further insisting that it was not his responsibility to define the issues which had been accepted for investigation and that he had received no guidance from

the Air Force indicating that he should broaden the scope of his investigation. Attached to this letter was a schedule outlining accomplished or anticipated processing steps, along with the actual and estimated dates of completion of each step.

Buynak also addressed a letter to Major Charles S. Brower, Legal Officer for Labor Relations at Vandenberg, outlining the difficulties encountered in processing, and requesting a meeting on July 30, 1980. Buynak concluded by charging that the agency either did not know what it was doing or was wilfully violating the orders of this Court. The meeting took place, as scheduled, on July 30, 1980, with Major Brower, Mr. Seneschal and Buynak in attendance. Various alternatives were discussed concerning the processing of plaintiff's RIF appeal, her priority re-employment rights claim and the reprisal charges. On August 8, 1980, Mr. Seneschal memorialized the substance of the June 30, 1980 meeting in a letter directed to Buynak, acknowledging the request for documents and assuring the latter that this request would be complied with. On September 16, 1980, Major Brower related to Buynak that Air Force Headquarters had reached the determination that no further administrative processing could be afforded, either directly through the Air Force or indirectly through the FEAA or the Merit Systems Protection Board (hereafter "MSPB"). This decision was assertedly based on the claim by the Air Force that plaintiff's appeal was an FEAA appeal and that there was no savings clause allowing the MSPB to assume appeals before the FEAA. The FEAA had been disbanded and would be unable to consider the claims. Thus, concluded the Air Force, plaintiff's claims, apart from her discrimination claim, could not be administratively processed. On September 16, 1980, Buynak again wrote to Investigator Johnstone, requesting a report on the status of the investigation and bringing to the latter's attention that none of the plaintiff's witnesses had been contacted or interrogatories sent to them, interrogatories had not been sent to be reviewed by Buynak as previously agreed, and the request for docu-

ments was still outstanding. This correspondence was never answered. On September 22, 1980, Mr. Johnstone forwarded his Report Of Investigation to the Base Commander at Vandenberg, finding no discrimination. Thereafter, Major Brower reconfirmed to Buynak that there would be no further processing of the plaintiff's claims.

On October 17, 1980, Lieutenant Colonel Pray, Chief of Personnel at Vandenberg, issued a "Notice of Proposed Disposition of Discrimination Complaint—Lowene R. Clemente," recommending cancellation of plaintiff's complaint. Upon receipt of this notice, Buynak, on October 31, 1980, wrote to Lt. Col. Pray alleging failures in the processing of plaintiff's claims as required by this Court's Judgment of Remand, and requesting combined adjudication of all four claims. This request made specific reference to the Air Force's own regulations; the constitutional rights of plaintiff; this Court's Remand Judgment; and the decision of *Owen v. City of Independence, supra,* which was attached to the letter along with the Motion of plaintiff before the Court of Appeals "To Dismiss the Appeal or Affirm, And for Equitable and Constitutional Relief." This letter was also sent to Major Brower and to Osinoff, defendants' attorney. On October 31, 1980, Buynak again wrote Osinoff stressing that defendants had failed to "diligently, promptly and completely process Ms. Clemente's claims," thereby "perfecting causes of action for constitutional violations against the Air Force as well as any governmental official responsible for these actions," again citing *Owen v. City of Independence, supra.* Finally, on November 19, 1980, a "Notice Of Final Decision" was rendered by Colonel Ronald J. Bishop, Jr., Base Commander of Vandenberg Air Force Base. This decision cancelled the plaintiff's complaint and added, self-servingly, that the Air Force had made a "good faith attempt" to comply with the Remand Judgment of this Court.

After receiving the final Air Force decision, plaintiff filed motions before this

Court to reopen proceedings and for leave to file an amended and supplemental complaint. It was at this time that plaintiff's attorney added the causes of action for constitutional violations in addition to the Title VII claims. These motions were granted and, in addition, this Court ordered that defendants maintain the status quo with respect to plaintiff's employment and provide her with RIF priority rights. Thereafter, on August 16, 1982, cross-motions for summary judgment were heard by the Court. Plaintiff asserted the deprivation of constitutional rights of administrative due process, equitable estoppel, right to equitable relief, and improper RIF. Defendants contended that, under Rules 12(c) and 56 of the Federal Rules of Civil Procedure, plaintiff's claims were time barred and that the Court lacked jurisdiction over matters not encompassed by the administrative complaint. In addition, defendants argued that the plaintiff had not charged a proper defendant with the Title VII violations, to wit, Hans M. Mark, the Secretary of the Air Force. All cross-motions were denied and the first three causes of action of the complaint were amended so that the Secretary of the Air Force would be the only defendant named and charged in these Title VII causes of action.

The last pre-trial motion was heard on April 4, 1980, at which time this Court determined that the defendants named in the last three causes of action were entitled to neither absolute nor qualified immunity from suit. The triable issues having been established, this matter proceeded to nonjury trial before the Court on May 23, 1983.

## IV

### DISCUSSION

Turning to the legal issues raised by the pleadings in this case, plaintiff's claims under Title VII and the Constitution will be considered separately, as well as all defenses to each such claim, setting forth the fact findings and legal conclusions which compel and support a Judgment for plaintiff and against defendants as hereinafter ordered.

1. *Plaintiff's Title VII Claim, 42 U.S.C. § 2000e, et seq.*

Plaintiff's Title VII claims flow from alleged inverse racial discrimination which ultimately resulted in the RIF and in retaliatory action against plaintiff in connection with her filing of a discrimination complaint. At trial, the Court found the evidence insufficient to support plaintiff's claim of racial discrimination as such. A finding of *discrimination,* however, is *not* a necessary condition precedent to recovery under Title VII *if* there is a showing of retaliation by the defendant against the plaintiff for having filed a discrimination complaint. *See* Schlei and Grossman, *Employment Discrimination Law,* 426–33 (BNA 1976). The basis for an action challenging the alleged retaliatory activity of an employer is found in 42 U.S.C. § 2000e–3(a) which provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The issue of retaliation is raised in the amended complaint which alleges the following retaliatory acts to have been committed by and through the agents of defendant Hans M. Mark, Secretary of the Air Force:

(a) erosion and change of position, responsibility and duties;

(b) removal of plaintiff into an office by herself and separation from her employment section;

(c) removal of plaintiff into an interim position at the grade of GS–5 even before the effective date of the RIF action;

(d) undermining plaintiff's supervisorial authority and controls;

(e) refusal to inform plaintiff of matters regarding the performance of responsibilities and duties;

(f) refusal to consider plaintiff's allegations in good faith, for resolution, and

(g) refusal to provide supervisory direction for plaintiff.

 The filing of a discrimination complaint is a protected right. As provided in the Air Force's own Regulations, 5 CFR § 713.261 (1977):

> Complainants ... shall be free from restraint, interference, discrimination or reprisal at any stage of the presentation and processing of a complaint, including the counseling stage under Section 713 or any time thereafter.

The evidence necessary to show retaliation is (1) knowledge by the employer that the complainant has or *will* file a charge; and (2) different conditions of employment, before and after the filing of a complaint, with negative conditions first appearing at or after the filing of a complaint. *See Pettway v. American Cast Iron Company,* 411 F.2d 998 (5th Cir.1969); *Barela v. United Nuclear Corporation,* 462 F.2d 149 (10th Cir.1972). The burden of proof on the employee is only a showing by a fair preponderance of credible evidence. *EEOC v. Kallir, Philips, Ross, Inc.* 401 F.Supp. 66 (SDNY 1975), *aff'd* 559 F.2d 1203 (2d Cir.1977).

 At trial, there was credible evidence to support a finding of retaliation on the part of the Air Force. This evidence, *inter alia,* consisted of the government's destruction of relevant documents prior to this matter proceeding to trial and the cover-up of the same.[1] Moreover, this was accompanied by the callous disregard of plaintiff's right to have her grievances aired before the appropriate administrative body by failing to advise her, as urged by the FEAA, of her need to elect between complex procedural remedial schemes, and the ultimate cancellation of her administrative complaint and failure to provide further processing with respect to all but one of plaintiff's claims because of her alleged failure to make the required election and see an EEO counselor within the time prescribed by regulation. In addition, it was demonstrated at trial that plaintiff was removed from office into an interim GS–5 position even before the effective date of the RIF, and had also been segregated from her fellow employees in an isolated office at an even earlier point in time. The transparent purpose of these retaliatory actions was to punish plaintiff as a troublemaker, a purpose which, in the opinion of this Court, stemmed in part from plaintiff's clear and prompt indications of her intent to file a discrimination complaint against her Air Force employer. These indications commenced as early as late 1976, when the plaintiff initiated contact with an individual she believed to be an EEO counselor, and continued through April 8, 1977, when she filed her "telegram appeal" with the Civil Service Commission. This notice, when coupled with the subsequent actions of the defendant Air Force, is sufficient to establish a *prima facie* case of retaliation under 42 U.S.C. § 2000e–3(a).

Defendant Air Force contends that the Court is without jurisdiction to dispose of plaintiff's claims under Title VII due to her failure to comply with the 30 day "statute

---

1. An especially disturbing instance of document destruction and alteration—a veritable "gate" type of coverup so egregious that this Court quite almost by reflex action termed it the "Vandenberg-gate" episode—was demonstrated by what happened to Ex. 167, p. 6. This was a photocopy of "Form 52"—"Request For Personnel Action" dated April 13, 1977, by which employees of defendants, having previously made up their collective, if not conspiratorial, minds to retaliate against plaintiff by cancelling out her position as EAM Project Planner (Grade 7) and "busting" or downgrading her to Clerk Typist (Grade 4), attempted to accomplish their planned reprisal. But this backfired when all the government could produce was this *photocopy,* which did not even have plaintiff's name on it, was rife with illegible handwritten notations, and covered with blank spaces obviously rendered blank, before photocopying, by the use of opaque tapes and erasures. These outrageous and transparent *ex post facto,* but ultimately self-defeating, alterations were only the worst of the several efforts made at Vandenberg Air Force Base in the vain undertaking to legitimize the reprisals and retaliatory activity taken against plaintiff. When the government finally had to admit that the *original* of this Form 52 could not be found because it had probably been destroyed in violation of Air Force rules and regulations, the misconduct of defendants was sealed.

of limitations" established by 42 U.S.C. § 2000e–16(c). *See Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In *Mahroom v. Hook,* 563 F.2d 1369 (9th Cir.1977), the Ninth Circuit held that the 30 day time limit found in section 2000e–16(c) begins to run from the time the plaintiff receives the "right to sue" letter from the agency.

■ While the Air Force is correct in its conclusion that a district court complaint must be filed within 30 days of notice of final agency decision, this rule is subject to the requirement that the complainant actually receive notice. The evidence in this case establishes beyond any question that neither the plaintiff nor her attorney received the requisite notice. Thus the jurisdiction of this Court is proper, and attached when she filed her complaint after the lapse of 180 days following the date of lodging her formal complaint with the agency. 42 U.S.C. § 2000e–16(c). Accordingly, the plaintiff's failure to comply with the 30 day limitation period is excused.

In addition to suggesting that plaintiff's federal court action was not timely filed, defendant Air Force further contends that the plaintiff should be foreclosed from prosecuting this action because of her failure to bring her discrimination complaint to the attention of an EEO counselor within the 30 day time limit prescribed by regulation. *See* 5 C.F.R. § 713.214(a)(1)(1977); 29 C.F.R. § 1613.214(a)(1)(1979). For the reasons expressed below, these arguments of the defendant Air Force completely fail to counter or rebut the Title VII claims of plaintiff for retaliatory actions taken against her.

■ Plaintiff herein should not be held accountable for any technical noncompliance with procedural formalities, however dilatory her actions may appear at first glance. Plaintiff should not be penalized for her misguided reliance on her first attorney, Newton. The Court determined, even before this matter came to trial, that plaintiff was excused for her inaction because of the ineffective assistance of her then counsel, Newton. Moreover, the Air Force received prompt, even premature notice of plaintiff's claims by the latter's telegrams of April 8, 1977 and July 17, 1977. These telegrams more than satisfy the policy of "equitable extension" of filing periods as articulated in *Cooper v. Bell,* 628 F.2d 1208 (9th Cir.1980). *See also, Bethel v. Jefferson,* 589 F.2d 631 (D.C.Cir.1978). In *Cooper,* plaintiff was granted an equitable extension of the period in which to file a discrimination charge because of his reliance on improper advice given to him by a government personnel officer. If the plaintiff's conduct in *Cooper* is excusable where no discrimination complaint, formal or informal, was filed, then *a fortiori* the deficiencies in plaintiff's efforts to have her grievance disposed of should be excused. The Air Force simply cannot be said to have been without notice of Mrs. Clemente's charge.

The Air Force was also seriously derelict in its duty to inform plaintiff of the avenues available to process her complaints. As mentioned above, the plaintiff filed her RIF appeal with the Civil Service Commission and combined her discrimination complaint with the appeal. The case was thus referred by the Commission to the agency to determine under which procedure, as between the RIF appeal system and the discrimination complaints system, this entire matter would be resolved. As provided for in 5 C.F.R. § 772.306(a),

> If the appellant has not been informed of the separate rights of appeal, the Appeals Authority shall refer the matter to the agency so the agency may explain the alternate rights of appeal to the appellant as provided in § 713.236 of Part 713 of this chapter and afford him the opportunity, if appropriate, to elect the avenue of appeal he wishes to pursue.

Paragraph 33 of AFR 40–713 addresses this subject matter:

> Where the basis of a complaint of discrimination is an action which may be appealed directly to the Civil Service Commission the complainant should be informed of the requirement to specify under which part of the regulations the

issue of discrimination is to be processed . . .

(2) If the complainant elects to proceed under FPM Chapter 713, after having been specifically informed of his right to use the other appellate system, then the entire matter, including the merits of the action, will be reviewed under this regulation.

. . . . .

b. . . . any investigation requested by the Commission shall be conducted in accordance with the Commission's specific written instructions.

The obvious purpose of these combined regulations is to avoid dual processing of complaints covering the same factual matters.

In accordance with these regulations, the Civil Service Commission directed the Civilian Personnel Office at Vandenberg to gain a written election of procedures from the plaintiff. The Commission's letter of July 18, 1977, states in relevant part:

Section 772.306 of the Commission's regulations provides that when an allegation of prohibited discrimination is raised in connection with a timely appeal, this Authority shall refer the matter to the agency for an explanation of alternative rights of appeal either under Part 713 or under Part 351 of the regulations and to secure appellant's election in writing.

Please inform appellant that this action can be pursued within your agency as a complaint of discrimination under Part 713 of the Civil Service Regulations. Explain in detail how such a complaint is processed to completion, including the role of the counselor, the investigation, the provisions of informal resolution, the notice of proposed disposition, the right of a hearing before a complaints examiner assigned by the Civil Service Commission, the recommended decision of the examiner, the final decision of the head of the agency, and the appeal right to the Appeals Review Board of the Commission, and to the U.S. District Court as appropriate . . . .

As clearly indicated by the Commission's directive to the Air Force, the burden was on the latter to secure the written election of procedures from the plaintiff and inform her, in detail, of the various processing steps. The Air Force failed to execute this duty by first neglecting to explain, in any comprehensible fashion, the alternative procedures available to plaintiff and then failing to gain her written election of procedures despite having received at least two subsequent requests from the FEAA to do so. The consequence of the Air Force's malfeasance was that the plaintiff's appeal was hopelessly lost in administrative limbo until it was ultimately resurrected by her newly retained counsel, Attorney Buynak, and was finally referred to an EEO counselor. Given the complex and incomprehensible maze of procedures and elections sufficient to confound most lawyers and even this Court, plaintiff, a humble civil servant, can hardly be expected to make an informed election of procedures without adequate guidance. Plaintiff's delay in contacting an EEO counselor is obviously explainable and excused for these reasons alone.

But even more persuasive to this Court than the above-stated reasons is the fact that technical compliance with the 30 day limitation period was actually achieved by plaintiff. Defendants have admitted that the Civilian Personnel Officer is the Chief EEO Counselor. Indirectly, through the FEAA, Civilian Personnel Officer Coady, as declared in his letter to plaintiff of July 26, 1977, actually received Mrs. Clemente's claims within the 30 day time limit for initial contact. It is thus undeniable that the timeliness of plaintiff's claims cannot reasonably be questioned.

Defendants further assert that this Court lacks jurisdiction over plaintiff's RIF appeal and reprisal complaints due to the latter's failure to exhaust her administrative remedies with respect to these claims. This argument of defendants, however, again misses the mark, inasmuch as the demand to process these claims was made on numerous occasions by Buynak. The Air Force, enabled by its own regulation, had the ability to process all of the claims as-

serted. As set out in greater detail above, AFR 40–713 provides in pertinent part:

> (2) If the complainant elects to proceed under FPM Chapter 713, after having been specifically informed of his right to use the other appellate system, *then the entire matter, including the merits of the action, will be reviewed under this regulation....* (emphasis added)

Recently, the Ninth Circuit confirmed in *Nolan v. Cleland,* 686 F.2d 806 (9th Cir. 1982), that the above language is to be interpreted to mean that the substance of the plaintiff's non-EEO claims are to be considered in the review of the EEO claims. Therefore, the Air Force not only had the ability but the obligation to process *all* of Mrs. Clemente's claims under this section, and was not limited to her discrimination complaint only. Hence, plaintiff's alleged failure to exhaust her administrative remedies with respect to her RIF and reprisal claims is a deficiency for which the defendant Air Force is solely responsible.

To punish plaintiff for her failure to overcome all of the obstacles the Air Force placed in her path to having her complaints administratively processed would be to create a gross injustice. Plaintiff's plight has not been dissimilar to that of plaintiff in *Bethel v. Jefferson,* 589 F.2d 631 (D.C.Cir. 1978). To borrow the words of Judge Robinson:

> In sum, Bethel reasonably attempted to bring his complaint before the administrative tribunal and it unreasonably refused to consider his claims. He could have done little more, and the agency could hardly have done less.

*Id.* at 645. Having considered the various defenses raised in opposition to the granting of judgment in favor of plaintiff on her claims and finding no merit in the opposition, it is now necessary to turn to the issue of the appropriate remedy or remedies.

 The remedial provisions of Title VII allow for injunctive relief, reinstatement, back pay or "other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g). The Court finds, as established by expert testimony, that plaintiff, by reason of the retaliatory activities of the defendant Air Force and its employees and agents, has been deprived of and is entitled to back pay of $27,480.24. This award represents the period of July 17, 1977, the effective date of the RIF, to May 23, 1983, the date of trial. In addition, the evidence at trial demonstrated that had the plaintiff not encountered purposeful and continued retaliatory resistance to her upward mobility, she would presently occupy the station of GS–12, step 4. At least two alternatives can be entertained in assuring that the plaintiff is restored to her "rightful place." First, courts have recognized an award of "front pay," or pay representing the time it would take the plaintiff to train and secure the position he or she was denied as a result of the prohibited conduct. *See James v. Stockham Valves & Fitting Co.,* 559 F.2d 310 (5th Cir.1977); *Montoya v. Anderson,* 511 F.Supp. 523 (D.C.Colo.1981). Nor does a front pay award granted against the government violate the doctrine of sovereign immunity. *Chewning v. Schlesinger,* 471 F.Supp. 767 (D.C.D.C.1979). A second alternative, in lieu of front pay, is "seniority relief," where the plaintiff is ordered to be put in the position he or she would have occupied but for the illegal conduct. *See Franks v. Bowman Transportation,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Richerson v. Jones,* 551 F.2d 918 (3rd Cir. 1977). To better facilitate and insure plaintiff's delivery from her present and long-static position, this Court should elect to enforce the latter remedy, and to order the Air Force to place plaintiff in a GS–12, step 4 station. Moreover, because plaintiff may not yet be qualified for this position, the Court should enjoin defendant Air Force to train plaintiff so that her qualifications will match her new assignment.

 Plaintiff concedes that interest is unavailable against the government because of the doctrine of sovereign immunity. *See Saunders v. Claytor,* 629 F.2d 596 (9th Cir.1980). The Court, however, does find that an award of attorneys fees and costs is appropriate under 42 U.S.C. § 2000e–5(k), since plaintiff has prevailed

on the merits. The amount of attorneys fees and costs will be established in a separate hearing to be held at a future date, the Court retaining jurisdiction for this purpose.

In addition to the above, this Court should enjoin defendants from taking further unlawful employment or retaliatory action against plaintiff, and should order that the personnel files of plaintiff for the period of July 17, 1977 to April 21, 1980 be purged by the elimination of all derogatory references to plaintiff and the insertion and substitution of appropriate records of this case and proceeding. Furthermore this Court should retain and reserve jurisdiction of this case and proceeding in order to insure the implementation of these orders.

### 2. Plaintiff's Due Process Claims

As indicated above, on April 30, 1980, an order was entered by this Court remanding this case to the Air Force to administratively process all of plaintiff's complaints. The order provided that plaintiff be permitted to be present at all stages of the administrative process and be represented by her attorney, that she not be questioned without her attorney present and that her attorney receive copies of all written communications involved in the processing.

The defendants, apparently under the pretext of attempting to comply with the Remand Judgment, agreed to produce certain documents, contact witnesses identified to be favorable to the plaintiff and establish an investigation schedule so as to provide notice of when the various steps of the investigation would proceed. In direct defiance of the Court's Remand Judgment as well as the constant and unambiguous demands of plaintiff's counsel urging them to comply with the same, defendants contumaciously refused to process all but one of plaintiff's complaints, and this in summary fashion. The responsibility for this gross dereliction in duty does not rest solely on any one person but can be attributed, in varying degrees, to the acts and omissions of the six individually named defendants. The record of this matter is replete with examples of Air Force personnel literally turning their heads and stubbornly ignoring the Court's April 30, 1980 Remand Judgment. For example, on April 25, 1980, following the oral orders of this Court which were ultimately memorialized as the Remand Judgment entered by the Court on April 30, 1980, plaintiff's counsel wrote to Civilian Personnel Officer Phillip Seneschal, encouraging the Base to administratively process plaintiff's complaint and specifically requesting:

(1) full, complete processing of all claims;

(2) a proposed schedule for processing;

(3) an outline of processing steps;

(4) copies of all applicable regulations;

(5) documents requested by motions to produce; and

(6) answers to interrogatories proposed in conformance with the oral orders of Judge Hauk.

Thereafter, defendants' attorney, Osinoff, contacted plaintiff's counsel directing that all communications should be sent directly to him rather than the Air Force. Buynak responded to this directive, citing Owen v. City of Independence, supra, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and warning that any further delay in processing would evidence a "wilful intent to extend these proceedings and arbitrarily deny the due process rights of plaintiff." Subsequent to this correspondence the Air Force dispatched an investigator to commence review of plaintiff's discrimination claim only. Upon receiving notification of the Air Force's request for an investigator, Buynak again wrote to Osinoff urging him to have his clients fully comply with this Court's Remand Judgment, to which the latter responded that the United States Attorney's Office "has no involvement in administrative proceedings of the Air Force."

Thereafter, Buynak met with Investigator Johnstone outlining plaintiff's complaints and her administrative processing expectations. Johnstone reiterated his intention to investigate the discrimination charge only, and was advised by plaintiff's counsel that any such limitation would be in

violation of the April 30, 1980 Remand Judgment of this Court.

Subsequent to this meeting, Buynak also met with Major Brower and Mr. Seneschal at which time various alternatives were discussed to bring about the processing of the three complaints of plaintiff yet outstanding. The follow-up to this meeting consisted of a confirmation that documents requested by Buynak of Mr. Seneschal would be produced along with a recommendation that plaintiff's three remaining complaints would be directed to the Merit System Protection Board (hereafter "MSPB"). Buynak's request for documents was never fully complied with and the suggestion to process plaintiff's claims through the MSPB proved unproductive, since the latter was not authorized to assume FEAA appeals.[2] Thus, according to Major Brower, no further administrative processing could be afforded.

At approximately the same point in time, Buynak again contacted Investigator Johnstone, requesting a status report on his investigation and pointing out that:

(1) none of plaintiff's witnesses had been contacted or interrogatories sent to them;

(2) interrogatories had not been reviewed with plaintiff's counsel as previously agreed; and

(3) the request for documents and answers were still outstanding.

Without responding to this letter from plaintiff's counsel, Investigator Johnstone on September 22, 1980 forwarded his final "Report of Investigation" to the Base Commander finding no discrimination. As is evident, this conclusion was reached by con-

tacting only those witnesses who were hostile to plaintiff's position, ignoring document requests perceived to be crucial by the plaintiff, failing to propound potentially significant interrogatories and involving plaintiff in the investigation to the least extent possible.

Following the submission of the investigation report to Lieutenant Colonel Pray, Chief of Personnel at Vandenberg, the recommendation of Investigator Johnstone was essentially "rubber stamped" and a "Notice of Proposed Disposition of Discrimination Complaint" issued, proposing cancellation of the complaint. Upon receipt of this notice, Buynak wrote to Lieutenant Colonel Pray, outlining the failures in the processing of plaintiff's claims as required by this Court's oral in-Court remand orders of April 21, 1983, and its written Remand Judgment of April 30, 1983, and requesting combined adjudication of all four claims. This request made specific reference to Air Force Regulations, the constitutional rights of the plaintiff, the orders of this Court and the decision of *Owen v. City of Independence, supra,* which was attached, as well as the motion before the Court of Appeals which outlined constitutional violations. This letter was also sent to defendants' counsel and Major Brower.

In lieu of responding to the above correspondence, on November 19, 1980, Colonel Bishop, Base Commander at Vandenberg, issued a "Notice of Final Decision" which cancelled Mrs. Clemente's complaint. Colonel Bishop's final decision concluded that the Air Force was not waiving the thirty day statute of limitations[3] and that the

---

**2.** As previously described in greater detail, the combined claims and complaints of plaintiff could have been effectively processed under Air Force Regulations, particularly AFR 40–713, thereby dispensing with the need of an appeal to any outside agency. Rather than looking upon the failure and refusal to process three of plaintiff's claims and complaints as a forced and therefore excusable inability to accomplish the processing under Air Force Regulations, it is the firm conclusion of this Court, following its extensive review of the exhibits in evidence and the testimony at trial, that plaintiff's grievances were all matters with which

the Air Force simply, stubbornly, and contemptuously chose not to deal.

**3.** As the Ninth Circuit, in its unpublished opinion of December 14, 1981, dismissing the earlier appeal of this case, observed:

Not to be outdone by the confused state of the proceedings, the government seems to have changed theories of defense at every turn. It rejected Mrs. Clemente's first complaint as premature and her second complaint as untimely. Similarly, its brief on appeal argues that Mrs. Clemente's failure to contact an EEOC counselor within 30 days precluded district court jurisdiction, but at

"Air Force has simply in good faith attempted to comply with Judge Hauk's order."

 Plaintiff clearly states a cause of action for violations of procedural due process under the Fifth Amendment of the Constitution. These constitutional claims flow from denying plaintiff any opportunity to be heard on three of her four administrative claims and the disposal of her discrimination claim in a grossly inadequate and highly superficial manner. The remedial basis for claims predicated upon violations of the U.S. Constitution by federal agents is found in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See also, Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Owen v. City of Independence, supra; Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928 (9th Cir.1977).

In *Bivens,* the principle was established that victims of constitutional violations by federal officials have a right to recover damages in federal court despite the absence of any statute conferring such right. In this regard, *Bivens* actions can be analogized to 42 U.S.C. § 1983, their state action counterpart, which provides:

> Every person, who, under color of any statute, ordinance, regulation, custom or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

Section 1983 and *Bivens* cases have been used interchangeably by the Supreme Court. As stated by Justice White in *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978):

> The section 1983 action was provided to vindicate federal constitutional rights.

That Congress decided, after passage of the Fourteenth Amendment, to enact legislation specifically requiring state officials to respond in federal court for their failures to observe the constitutional limitations in their powers is hardly a reason for excusing their federal counterparts for the identical constitutional transgressions. To create a system in which the Bill of Rights monitors more closely the conduct of state officials than it does that of federal officials is to stand the constitutional design on its head.

The Ninth Circuit, in particular, has urged federal courts to be mindful of the need to be inventive and resourceful in protecting constitutional guarantees. In *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928 (9th Cir.1977), the Court stated:

> No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of government, from the highest to the lowest, are creatures of the law and are bound to obey it
> . . . .

The Civil Rights Act of 1871 was one of the vehicles whereby Congress sought to enforce the provisions of the then recently enacted Fourteenth Amendment. Congress intended to provide victims of constitutional deprivations a constitutional remedy whereby the state tort remedy, although available in theory, was not available in practice. Thus, section 1983 and Fifth Amendment relief must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

In extending this liability to governmental entities themselves, the United States Supreme Court in *Owen v. City of Independence, Missouri, supra,* emphasized,

> How "uniquely amiss" it would be, therefore, if the government itself—"the social organ to which all of our society look for the promotion of liberty, justice, fair and

oral argument the government contended that her failure to exhaust administrative remedies prevents review.

*Clemente v. United States of America, et al.,* 667 F.2d 1030, Slip Op. at 1 (9th Cir.1981).

equal treatment and the setting of worthy norms and goals for social conduct"— were permitted to disavow liability for the injury it has begotten ... A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed. [Citations omitted]

445 U.S. at 651, 100 S.Ct. at 1415.

. . . . .

The Court added:

Doctrines of tort law have changed significantly over the past century, and our notions of governmental responsibility should properly reflect that evolution. No longer is individual 'blameworthiness' the acid test of liability; the principles of equitable loss-spreading has joined fault as a factor in distributing the cost of official misconduct.

*Id.* at 657, 100 S.Ct. at 1418.

The Court wound up with these thoughts on cost-sharing:

We believe that today's decision together with prior precedents in this area, properly allocates these costs among the three principals in the scenario of the 1983 cause of action: The victim of the constitutional deprivation; the officer whose conduct caused the injury; and the public, as represented by the municipal entity. The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury. The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages that are more appropriately chargeable to the populace as a whole. And the public will be forced to

bear only the costs of injury inflicted by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy."

*Id.*

■ Upon careful and painstaking review of the evidence and the testimony heard at trial, it is the conclusion of this Court that the purposefully evasive, imprecise and haphazard manner in which plaintiff's grievances were processed constitute a customary practice and policy of the defendant Air Force. Not overlooking the fact that the *Owens* decision addressed the issue of a *municipality* being held liable in a § 1983 action, the issue of a federal sovereign violating its own Constitution is indistinguishable. Accordingly, this Court finds that the federal government is not immune from an action being brought against it as a result of its agents having violated the Fifth Amendment rights of a United States citizen. The Supreme Court has firmly held that "it deems it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). We cannot help but recognize and enforce the natural and logical extension of *Butz* and *Owens,* which leads us inescapably to conclude that just as state agencies and state officers are both liable for constitutional violations under 42 U.S.C. § 1983, so also federal agencies and federal officers should be and are liable for constitutional violations under *Bivens.*[4]

■ The defendants argue that plaintiff's due process argument is without basis as she has not been deprived of any liberty or property interest within the protections of the Fifth Amendment. The Court, however, takes issue with these contentions.

---

**4.** The Court recognizes that this assertion is directly contrary to Justice Powell's dissenting opinion in *Owens* at 445 U.S. 622, 670 n. 12, 100 S.Ct. 1398, 1425 n. 12, 63 L.Ed.2d 673. However, the principles articulated by the ma-

jority in *Owen* should be and are extended here to the federal government which, as conceded by Justice Powell, has a much greater financial ability to absorb such judgments than a municipal government. *Id.* at 670, 100 S.Ct. at 1425.

The right to hold specific employment and to follow a chosen career free from unreasonable governmental interference comes within the liberty and property concepts of the Fifth Amendment: "property" consisting of the employment itself and "liberty" consisting of the freedom to follow a career. *Fitzgerald v. Hampton,* 467 F.2d 755 (D.C. Cir.1972).

The property interest involved herein is plaintiff's GS–7 position and the liberty interest her Civil Service career. *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Horne v. MSPB,* 684 F.2d 155 (D.C.Cir.1982); *Fitzgerald v. Hampton,* 467 F.2d 755 (D.C.Cir.1972). The action of the agency and its agents in effectuating the RIF and thereafter not providing plaintiff with a forum in which to contest that action has seriously prejudiced and realistically destroyed her ability to obtain other employment or to properly pursue her Civil Service career. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The Air Force established procedures for evaluating combined RIF appeals and discrimination complaints as well as complaints of reprisal and reemployment priority rights. *See* AFR 40–713. *See also Nolan v. Cleland, supra.* Having once established these procedures, they must be followed or plaintiff's due process rights will be violated. *See Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). The Air Force, however, repeatedly failed to abide by these procedures, even after mandatory orders of this Court. A more fundamental and extreme denial of plaintiff's right to be heard cannot be imagined. As stated by Justice Burton in *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 162–163, 71 S.Ct. 624, 643–644, 95 L.Ed. 817 (1951):

> The requirement of "due process" is not a fair-weather or timid assurance. It must be respected in times of calm and in times of trouble; it protects aliens as well as citizens. But "due process", unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American history and civilization, "due process" cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man and more particularly between the individual and government, "due process" is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess. Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably evolving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.

While this Court is thoroughly convinced that the due process rights of plaintiff were violated, there still remain several threshold issues which must be confronted before liability may be imposed.

The first challenge defendants make to plaintiff's due process claims is jurisdictional, arguing that Title VII provides the exclusive remedy to any complaint where discrimination in federal employment is claimed. *See Brown v. GSA,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Defendants also cite the recently decided Supreme Court decision of *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), for the proposition that the existence of a Title VII remedy is a "special factor counselling hesitation" or an "adequate alternative remedy" within the meaning of *Bivens,* thus precluding an award of constitutional damages. The Ninth Circuit has also had opportunity to decide whether Title VII and *Bivens* claims could peacefully coexist in *Nolan v. Cleland,* 686 F.2d 806 (9th Cir.1982). As observed by Judge Hoffman in that case:

> The holding of *Brown, supra,* is controlling on this issue and we feel that such

holding cannot be circumvented where the factual predicate for Nolan's due process claim is the discrimination which is the basis of her Title VII claim. The threshold question in Nolan's action is the constructive discharge claim and she would not be able to recover on the due process claim due to the *identical* factual basis, and, therefore, the district court correctly dismissed the due process count and approached the action solely as a Title VII action pursuant to *Brown, supra.* (Emphasis added)

*Id.* at 815. While this Court has been unable to locate a case where Title VII and *Bivens* actions have been concurrently maintained, it is apparent that the instant action is factually and legally distinguishable from the *Brown, Bush* and *Nolan* holdings.

Plaintiff's due process and Title VII claims flow from *entirely distinct* factual occurrences, involve different individuals and occurred at separate points in time. The *substance of the Title VII action dealt with retaliatory activity,* the factual basis of which consisted of Base officials circumventing their duty of advising plaintiff how to proceed within a complex regulatory system, destroying documents that tended to support claims stated under Title VII, covering up the same, removing plaintiff from her office prematurely and isolating her from her peers. All of this occurred after supervisory and other personnel became aware of plaintiff's intention to file a discrimination complaint. *On the other hand, plaintiff's due process claims arose long after* her initial Title VII complaint was filed in district court, this Court had by its Remand Judgment mandated full processing of all of plaintiff's grievances, and entirely different Base officials failed and refused to accomplish the same. By no stretch of the imagination could these due process complaints be considered compensable under Title VII, since no discriminatory basis or retaliatory motive can be shown.

█ It must follow, therefore, that Title VII does not and cannot provide the exclusive remedy under these circumstances. The coexistence of *Bivens* and Title VII

claims is justified by the clear distinction between the factual contexts in the instant case and the factual contexts in the cases which have disallowed concurrent *Bivens* constitutional claims and Title VII claims. As we have pointed out, the *Brown* and *Nolan* courts could not reconcile constitutional and Title VII claims in the same action when these claims shared the *same factual predicate.* But this is simply not the case in the instant action where the factual predicates are completely different in time, activities and actors.

With respect to the recent *Bush* holding, plaintiff, unlike Mr. Bush, is not trying to supplement what she perceives to be an inadequate remedy for the wrong she has suffered. Rather, plaintiff is seeking damages for an entirely independent wrong. Another point of distinction between this action and *Bush* is that in the latter action, the petitioner's constitutional claims were based upon the abridgement of his First Amendment rights. The Court found that retaliatory action for exercising one's First Amendment rights had been prohibited by the regulatory scheme under which Mr. Bush had proceeded; and since he had already received a viable, adequate and meaningful alternative remedy under that regulatory scheme he was precluded from augmenting that recovery by pursuing a *Bivens* claim. It would be absurd to suggest that the same rationale could apply to Mrs. Clemente. Obviously the regulatory scheme under which she attempted to proceed does not allow or permit the failure or refusal of its administrators to execute its mandates without giving administrative due process. Thus plaintiff had no viable, adequate or meaningful remedy under the regulations of either the Civil Service or the Air Force to redress the failure and refusal to provide her administrative due process.

Accordingly, this Court holds that Title VII did not provide the exclusive remedy in this case, that plaintiff did not have a viable, adequate or meaningful alternative remedy, and that the Court has jurisdiction over plaintiff's due process claims.

The defendants' next point of contention deals with immunity from suit. Having already decided that the Air Force is not

immune, given the holding of *Owens v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the question of any immunity of the individual defendants is now taken up.

Initially, defendants assert that they are entitled to absolute immunity under the rationale of *Butz v. Economou, supra,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), where a functional approach to immunity was employed. This approach, simply stated, would allow officials, notably judges and prosecutors, to receive a full exemption from liability "because of the special nature of their responsibilities." *Id.* at 511, 98 S.Ct. at 2913. This approach was recently upheld by the Supreme Court in *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). Upon review of the official duties of the defendants named individually herein, this Court finds that none of these individuals has responsibilities in the administrative process that even approximate that of judge or prosecutor and that the nature of their responsibilities is not so special as to totally shield them from civil liability. *See also, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

While it is evident that the functions of the individual defendants are not sufficiently sensitive so as to entitle them to absolute immunity, the more critical inquiry is whether they should be protected by any qualified immunity. The test for qualified immunity, as articulated in *Harlow v. Fitzgerald, supra,* is whether the government official claiming immunity violated "clearly established" statutory or constitutional rights of which a reasonable person would have known while in the course of performing a discretionary function. *Id.* If the law is clearly established, the immunity defense should generally fail *unless* the official claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard. *Id.*

The conduct, or more properly, the refusal to act, of the individual defendants herein evidenced a purposeful, wilful and deliberate disregard of the due process rights of Mrs. Clemente, and contempt for and refusal to obey the Remand Judgment of this Court. Plaintiff's counsel explained in writing and orally, time and again, from April 25, 1980 until June 27, 1980, plaintiff's rights to due process and the obligations of defendants thereunder. Each of the individual defendants was thoroughly informed with respect to Mrs. Clemente's rights and legally justified claims and demands. A copy of this Court's Judgment, Findings of Fact and Conclusions of Law, the *Owens* decision and the motion made before the Court of Appeals were all sent to these defendants. How it can now be claimed that the defendants did not know that their conduct was in violation of the administrative due process rights of plaintiff is incredible. It is thus the conclusion of this Court that the individual defendants charged with violations of plaintiff's constitutional rights are not entitled to immunity, qualified or absolute.

Having determined that the plaintiff's due process claims are properly before this Court, it is now necessary to decide upon an appropriate remedy or remedies.

As previously stated, an action for constitutional damages is in the nature of an action in tort, and therefore damages are awardable. Thus, a judgment for compensatory damages is permissible and appropriate. *Bivens v. Six Unknown Federal Narcotics Agents, supra.* Evidence was introduced at trial sufficient to demonstrate that plaintiff suffered special damages in the amount of $1,000.00. In addition, it is the conclusion of this Court that plaintiff was damaged generally in the amount of $25,000.00, this amount representing the physical and mental anguish she suffered as a result of her administrative ordeal.

Apart from damages to compensate plaintiff for the wrongs she suffered, it is also this Court's opinion, finding and conclusion that exemplary damages are necessary to deter these defendants, and others similarly situated, from further engaging in such irresponsible and injurious activity. The recent decision of *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), provides the legal basis for imposing

punitive damages for official misconduct. The standard for such an award under *Smith* is a showing of "reckless or callous indifference to the plaintiff's federally protected rights." This standard, indeed, was the watchword here by which all of the defendants seemed to govern their actions toward plaintiff, and thus exemplary damages are both justifiable and appropriate. Punitive damages will be imposed upon each defendant according to his and its degree of responsibility in undermining and flouting the federally protected due process rights of Mrs. Clemente, rights to administrative due process which the defendants arrogantly trampled upon and crushed.

A final issue to be disposed of is the matter of attorneys fees and costs in connection with these constitutional actions and claims. Plaintiff argues that fees and costs should be awardable against the government under the Equal Access to Justice Act, 28 U.S.C. § 2412(b). This section provides, in effect, that any award of attorneys fees and costs properly chargeable to an individual may be charged to the government under appropriate circumstances. Plaintiff cites the decision of *Lauritzen v. Secretary of the Navy,* 546 F.Supp. 1221 (C.D.Cal.1982), for the proposition that an award of attorneys fees in a *Bivens* action may be analogized to a similar award in a § 1983 action which is authorized by 42 U.S.C. § 1988. Finding the reasoning of *Lauritzen* to be persuasive, this Court finds an award of attorneys fees and costs incurred in connection with the prosecution of plaintiff's constitutional claims here is appropriate and should be made.

The foregoing shall constitute the findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

### ORDER FOR JUDGMENT

Based on the foregoing, IT IS HEREBY ORDERED THAT

*Under Plaintiff's Title VII Claims, 42 U.S.C. § 2000e et seq.:*

(1) Plaintiff should be awarded back pay in the amount of $27,480.24 pursuant to 42 U.S.C. § 2000e–5(g).

(2) Plaintiff should be promoted to a GS–12, step 4 position and given appropriate training to prepare her for the same under 42 U.S.C. § 2000e–5(g).

(3) Plaintiff should be awarded attorneys fees and costs of suit under 42 U.S.C. § 2000e–5(k) in connection with the prosecution of her Title VII claims in an amount to be determined at a future hearing.

(4) Defendants should be enjoined from taking any further unlawful employment or retaliatory action against plaintiff.

(5) The personnel files of plaintiff for the period of July 17, 1977 to April 21, 1980, should be purged by the elimination of all derogatory references to plaintiff and the insertion and substitution of appropriate records of this case and proceeding.

*Under Plaintiff's Constitutional Claims:*

(6) Plaintiff should be awarded compensatory general and special damages in the amount of $26,000.00.

(7) Exemplary and punitive damages should be imposed against the defendant Secretary of the Air Force and the Air Force in the amount of $150,000.00.

(8) Exemplary and punitive damages should be imposed against defendant Ronald J. Bishop, Jr., in the amount of $1,000.00.

(9) Exemplary and punitive damages should be imposed against defendant Harold L. Pray in the amount of $1,000.00.

(10) Exemplary and punitive damages should be imposed against defendant Charles L. Brower in the amount of $2,500.00.

(11) Exemplary and punitive damages should be imposed against defendant Phillip G. Seneschal in the amount of $2,500.00.

(12) Exemplary and punitive damages should be imposed against defendant Harry W. Johnstone in the amount of $2,500.00.

(13) Exemplary and punitive damages should be imposed against defendant Jeffrey W. Cook in the amount of $1,000.00.

(14) Plaintiff should be awarded attorneys fees in connection with the prosecution of her constitutional claims under 28 U.S.C. § 2412(b), as well as costs under 28 U.S.C. § 2412(a), in amounts to be determined at a future hearing. In this connection, and in accordance with the Court's Order of July 5, 1983, defendants' opposition to plaintiff's application for attorneys fees, expenses and costs should be filed within 30 days after receipt by the U.S. Attorney's Office of this Decision and the accompanying Judgment, and counsel for plaintiff and for defendants should confer with the Courtroom Deputy Clerk to obtain the earliest Court hearing date, which date should be noted by defendants' counsel on the Opposition papers title page.

(15) This Court should retain and reserve jurisdiction of this case and proceeding in order to insure the implementation of these orders.

(16) It should be further ordered that the Clerk of Court shall forthwith file and enter this Decision and accompanying Judgment, and serve copies thereof on all counsel of record for all parties herein,

LET JUDGMENT BE ENTERED ACCORDINGLY.