Janiece S. NOLAN, Plaintiff-Appellant,

v.

Joseph Maxwell CLELAND, et al.,
Defendants-Appellees.

No. 80–4076.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1981.

Decided Sept. 8, 1982.

Robert Lincoln Nolan, Lafayette, Cal., for plaintiff-appellant.

Deborah Seymour, Asst. U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before KENNEDY and TANG, Circuit Judges and HOFFMAN *, Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

This case involves the appeal of the district court's order granting summary judgment[1] in favor of the Veterans Administration (VA) in the Title VII action of Janiece S. Nolan, Ph.D. (Nolan) against the VA. Nolan alleged that she was forced to resign from her VA position because of sex discrimination. Nolan argued that summary judgment was inappropriate because: (1) there was a genuine issue of material fact concerning the VA's denial of her request for leave without pay; (2) there was a genuine issue of material fact concerning the voluntary nature of her resignation; (3) the administrative remedy for her discrimination claims, other than the resignation and leave issues, was inadequate; (4) Title VII was not her exclusive remedy and other jurisdictional bases should not have been stricken; and (5) one of the individual defendants should not have been dismissed because he was a necessary party. We reverse the district court's order of summary judgment on the issue concerning the voluntary nature of Nolan's resignation and affirm the district court's order of summary judgment in all other respects.

## I. FACTS

Nolan was employed by the VA in several capacities, beginning in 1970 as a research physiologist at the VA Hospital in Martinez, California. In August 1972, she was promoted to Acting Associate Chief of Staff for Research at the Martinez facility. In July 1972, Nolan applied for the VA's Graduate Education Program (GEP). The GEP was a competitive, nationwide program which provided full salary for VA employees and tuition for a graduate degree in health care administration. In return, GEP selectees agreed in writing to continue in VA service for six years following graduation. Also, the selectees agreed to accept any VA assignment for which they were qualified. This commitment required a certain amount of geographic mobility on the selectees' part in the first few years following their graduation. If a selectee did not remain in the VA's service for the six year period, he or she was required to reimburse the VA for the tuition grant.

The VA initially recommended Nolan for the program and she ranked first in the nationwide competition for GEP positions.

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. See Nolan v. Cleland, 482 F.Supp. 668 (N.D. Cal.1979).

In March 1973, Nolan was preliminarily selected for the program, but this decision was not formally announced. In May 1973, Nolan married Dr. Robert L. Nolan, M.D., then Chief of Staff at the Martinez VA Hospital.[2] Nolan's marriage seemed to be the underlying cause of her subsequent problems with the VA. It was after the VA was notified of this marriage that certain VA officials expressed doubt concerning Nolan's commitment to the GEP due to their perception of her decreased mobility by virtue of her marriage to the Chief of Staff of a VA station.[3] In June 1973, Nolan was notified that she was not one of the final four GEP selectees.

In July 1973, Nolan filed her first equal employment opportunity (EEO) complaint against the VA alleging that she was not selected for the GEP due to her sex. An EEO investigator found that Nolan had been denied the GEP position due to her sex because of VA officials' inappropriate concern with her assumed lack of after-marriage mobility. Nolan withdrew her EEO complaint when the VA retroactively appointed her to the GEP with full back pay in January 1974. Nolan then signed the GEP agreement which required that she accept any VA assignment for which she was qualified after graduation and remain in VA service for six years. Nolan had started her hospital administration graduate program in the fall of 1973 at the University of California at Berkeley, and continued her studies full time while working half-time with the VA.

In January 1975, Nolan applied in writing to the VA Central Placement Office in Washington, D. C. for a position after her June 1975 graduation as Coordinator of Medical District 29 in San Francisco, a new position being established as part of an executive reorganization. Nolan also expressed her professional preference for "staff" rather than "line" positions.[4] As part of the job selection process, Nolan needed evaluations from her supervisors.[5] Paul O. Battista, Hospital Director of the VA Hospital at Martinez at the time of Nolan's 1973 EEO complaint and Director of Field Operations for Region 7 (which included District 29) when Nolan applied for the coordinator position, and Wallace Koseluk, Hospital Director of the VA Hospital at Martinez at that time and also Nolan's preceptor in the GEP, were asked to complete evaluations of Nolan.

In February 1975, Koseluk submitted an MPI appraisal for Nolan, but did not provide the required qualitative evaluation because he had only "limited personal contact" and "no objective basis" to complete the evaluation. The VA Central Office asked him to submit a second MPI rating and at this time he rated Nolan as "very good"[6] with a score of 47 out of a possible 60. This rating was not higher because Koseluk stated that Nolan had problems cooperating with co-workers. Battista, who had supported Nolan's original GEP application, refused to forward an MPI based on his alleged lack of current knowledge about Nolan's performance.

On March 20, 1975, Nolan filed her second EEO complaint alleging that Koseluk's evaluation and Battista's failure to make an evaluation were retaliation for her previous discrimination complaint. She further alleged that she could not be effectively con-

2. The same Robert L. Nolan, Esq. is also counsel for Janiece Nolan in this action.

3. The VA officials were allegedly concerned that VA regulations did not permit a husband and wife in management positions in the same VA facility. Nolan argued on appeal that no such regulations existed and another husband and wife were assigned to management positions at the Martinez VA hospital until 1974–75.

   Nolan (formerly McHale) was married when she applied for the GEP. It was only after she obtained a divorce and married Dr. Robert Nolan that her mobility came into question.

4. Staff positions were more of a supervisory and administrative nature as opposed to line positions which were field positions.

5. These evaluations were called Management Personnel Inventory (MPI) ratings.

6. Nolan emphasized that despite such a "very good" rating, it placed her near the bottom of a best qualified list with only ten persons ranking below her.

sidered for the Coordinator of Medical District 29 position because of such discrimination based on her sex. The VA determined that this complaint was premature because the coordinator position was not definitely established in the then uncompleted reorganization, and, therefore, the complaint was held in abeyance.

In May 1975, a VA Central Office personnel subcommittee met in Washington, D. C. for placement of GEP graduates. Four staff positions were recommended for Nolan. The subcommittee also stated that Nolan was qualified for the Assistant Coordinator position in District 29, but that this position was uncertain at that time because of the reorganization of the district, and, therefore, no placement recommendation could be made on such position.

In June 1975, Nolan commenced efforts to secure employment outside of the VA. Specifically, she applied for a position at the University of California Medical School.[7] Meanwhile, Battista had rejected the personnel subcommittee's recommendations concerning Nolan's placement in staff positions because he still desired to test her mobility.[8] On June 20, 1975, at Battista's urging, Nolan was offered the position of Assistant Hospital Director Trainee (AHDT) in the Palo Alto, California, VA Hospital. This was not a staff position, but a line position that could involve frequent transfers. This position was usually limited

to those who specifically indicated interest in such an assignment.[9]

The district court stated that, prior to receiving the AHDT offer, Nolan had sought and obtained a job offer from the University of California Medical School. Nolan argued that she did not accept this position until she had been informed of the AHDT assignment by the VA.[10]

Nolan began working at the medical school some time in July of 1975. She did not inform the VA about such employment, but on July 7, 1975, Nolan requested in writing five months leave without pay pending EEO processing of her second complaint concerning the evaluations. Nolan stated that acceptance of the AHDT assignment prior to resolution of her complaint might prejudice the investigation and her rights under applicable laws and regulations. Dr. Chase denied Nolan's request by letter dated July 14, 1975. He stated that possible prejudice from assuming a job assignment during the pendency of an EEO complaint was not included in the appropriate regulations[11] as grounds for leave without pay. Nolan subsequently requested reconsideration of her leave request on July 22, 1975 and stated that denial of her request might force her into an involuntary resignation.

On July 30, 1975, Nolan filed her third EEO complaint alleging that the AHDT assignment and non-selection for the coordinator position constituted reprisal for her

---

7. The VA argued that Nolan's search for non-VA employment violated her written agreement with the VA. The VA did not cite any specific provision in the agreement for the proposition that mere search or application for a non-VA job was a violation of such agreement.

   Nolan argued that she was justified in looking for other employment because: (1) she had been seeking a VA position for over seven months and had not yet received an offer from the VA; (2) she had unsuccessfully sought MPI evaluations free from discrimination; (3) her second EEO complaint concerning such discrimination had not been investigated yet; (4) graduation occurred and other graduates had been placed; and (5) two VA officials had already discriminated against her and she knew it.

8. The EEO examiner noted a general VA placement practice of accommodating graduates' geographical preferences when possible.

9. The EEO examiner noted that Dr. John Chase, Chief Medical Director of the VA, approved the AHDT offer to Nolan, but he did not know that Nolan had not indicated an interest in the AHDT program. Dr. Chase was unaware of any instance where an individual received an AHDT assignment and had not made a request for such assignment.

10. The hearing examiner found that Nolan accepted outside employment in mid-July 1975.

11. Federal Personnel Manual (FPM) Supplement 990–2, Book 630, Sub-Chapter 12–LWOP, provides a non-exclusive list of examples when leave without pay requests should be granted.

prior complaints. Dr. Chase denied Nolan's request for reconsideration on August 1, 1975 and ordered Nolan to report to the AHDT position in Palo Alto on August 4, 1975. On August 3, 1975, Nolan resigned from the VA and stated that her resignation was involuntary, and a product of the discrimination that resulted in her denial of leave and was also the basis for March 30, 1975 and July 30, 1975 EEO complaints. On September 12, 1975, Nolan filed a fourth EEO complaint alleging that denial of her leave request was discriminatory and her resignation was involuntary, and in effect a constructive discharge.[12]

On October 8, 1975 Nolan filed an appeal of the leave and resignation issues with the Federal Employees Appeals Authority (FEAA) of the Civil Service Commission as an adverse action under FPM § 752. She was advised that 5 CFR § 772.306(a)(2) required an election of remedies. She could elect to pursue adverse action channels (FPM § 752) or EEO channels (FPM § 713). Nolan elected to proceed with the § 713 EEO appeal and § 752 adverse action appeal was cancelled.

Nolan's second, third, and fourth EEO complaints were consolidated, and a hearing was held May 24–26, 1976. On July 16, 1976, the EEO hearing examiner issued her findings that Nolan's evaluations or lack thereof were discriminatorily motivated and her AHDT assignment was the result of Battista's retaliatory motives to test Nolan's mobility. The EEO hearing examiner found that Nolan was not the subject of discrimination regarding her non-selection for the coordinator position and such position was properly filled as a result of organizational planning.[13]

The denial of Nolan's request for leave was found to be an exercise of independent judgment by Dr. Chase [14] and not an act of discrimination. No basis was found to substantiate Nolan's contention that acceptance of the AHDT position would prejudice her EEO complaint. Finally, Nolan's resignation was found to be voluntary. The hearing examiner concluded there was not a scintilla of evidence that the VA exerted external pressure or coercion to obtain Nolan's resignation and there was no causal connection between any discrimination she may have experienced and the voluntariness of her resignation. The VA adopted the hearing examiner's findings by letter dated August 17, 1976.

As a remedy for the discrimination findings, the hearing examiner recommended that Koseluk's evaluations be removed from VA records. No corrective action was recommended as to what Nolan's job assignment should or should not have been as of June 1975, when she graduated from Berkeley in light of her voluntary resignation. Similarly, back pay was not awarded since Nolan's salary at the University of California position was thought to be at a rate of pay higher than the VA offered.[15]

On September 3, 1976, pursuant to FPM regulations, Nolan appealed the denial of leave and voluntariness of resignation issues to the Appeals Review Board of the Civil Service Commission (Board). The non-discrimination finding concerning the

---

12. By November 1975, Nolan had repaid the VA all funds for her tuition and GEP expenses, pursuant to the GEP agreement that if GEP graduates did not remain in VA service for six years they were required to reimburse the VA for such expenses.

13. The hearing examiner concluded that Nolan justifiably challenged the filling of the coordinator position due to a lack of communication and interaction between the Central Office and local level concerning the status of this position. Although such confusion reflected unfavorably on the VA as a whole, the hearing examiner decided that it did not constitute a planned effort to discriminate against Nolan.

14. Leave requests were usually handled at the regional, district, or local level. However, in light of previous discrimination allegations, the decision on Nolan's leave request was made by the Chief Medical Director, Dr. Chase, at the VA Central Office in efforts to afford a dispassionate determination.

15. The district court initially stated that Nolan's income was higher at the University, but the court issued a post-judgment order deleting the "at a rate of pay higher than the VA offered" phrase from its initial order as a clerical error.

coordinator position was not appealed. On June 2, 1978, the Board affirmed the findings of the VA.

On July 10, 1978, Nolan brought this action in district court seeking *de novo* review of the administrative decisions. In her first cause of action, Nolan sought review of the coordinator, leave, and resignation issues which she claimed were acts of discrimination on the basis of her sex which culminated in her constructive discharge. In her second cause of action, Nolan argued that the VA's failure to process her § 752 appeal was a due process violation. Nolan sought back pay or retroactive leave without pay, reinstatement, and attorney fees. Jurisdiction was premised on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16; 42 U.S.C. § 1981; 28 U.S.C. §§ 1343(4), 2201 and 2202; 5 U.S.C. §§ 701 *et seq.*, 7501 and 7532; and Executive Order 11478.

Nolan moved for summary judgment and the VA filed a cross motion for summary judgment. The district court granted the VA's motion and this appeal was taken from such judgment.

## II. LAW

### A. Summary judgment on the discrimination claims.

■ As a federal employee Nolan was entitled to *de novo* review in the district court of her Title VII action on the issues that were determined against her during the administrative proceedings. *See Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Nolan argued that the district court's grant of Fed.R. Civ.P. 56(c) summary judgment deprived her of her right to *de novo* review. However, in some situations summary judgment may be based on the district court's review of the proceedings and record from the administrative level. *See Hackley v. Roudebush*, 520 F.2d 108, 156–57 (D.C.Cir.1975). The VA was entitled to judgment as a matter of law if there were no genuine issues as to any material facts based on the evidence presented to the EEO hearing examiner.

### 1. Discrimination claim concerning the VA's denial of Nolan's request for leave without pay.

Nolan requested leave without pay pending the outcome of her EEO complaint concerning evaluations of her prior job performance. She stated that acceptance of the AHDT assignment prior to resolution of her complaint might prejudice her rights and the pending investigation. Dr. Chase denied the leave request and the district court decided that such denial was not shown to have been discriminatory.

Nolan contended that summary judgment should not have been granted because managerial discretion was involved in Dr. Chase's denial of the request. Such discretion questioned Dr. Chase's motives and intent in his decision. Nolan argued that this state of mind issue coupled with the VA's admitted past discrimination toward Nolan created a genuine issue of material fact that should not have been determined on summary judgment. *See Hackley v. Roudebush, supra,* at 157.

In *Hackley, supra,* 520 F.2d at 157, the D. C. Circuit reversed the district court's grant of summary judgment in a race discrimination claim involving the promotion of a federal employee. Although the court stated summary judgment may be appropriate based on the administrative record in some situations, it also stated that summary judgment is precluded if the motive underlying a crucial factual issue involved in a discretionary promotion decision is disputed. *Id.; see Mabey v. Reagan*, 537 F.2d 1036, 1045 (9th Cir. 1976); 6 *Moore's Federal Practice* ¶ 56.17[41.–1], at 930 (2d ed. 1982). Nolan contended that Dr. Chase's motives were questionable because other VA officials discriminated against her in the past and this pattern of discrimination raised an inference in Nolan's favor that such discrimination also pervaded Dr. Chase's decision to deny her leave request.

■ It is a fundamental proposition that, in reviewing the district court's order of summary judgment in favor of the VA, all

permissible inferences properly drawn from the record must be drawn in favor of Nolan, the non-moving party. *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1279–80 (9th Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). The court in *Ruffin* set forth the framework for review of a grant of summary judgment:

> If the movant satisfies his initial burden of demonstrating the absence of a genuine issue of fact, the burden then shifts to the opponent to come forward with *specific* facts showing that there remains a genuine factual issue for trial. The evidence offered in opposition to the motion for summary judgment must be "significantly probative" as to any fact claimed to be disputed. "Where it is clear from the evidence presented at the hearing on a motion for summary judgment that the movant would be entitled to a directed verdict where [sic] the case to proceed to trial," summary judgment ordinarily should be granted.

*Id.* at 1280 (emphasis in original) (citations omitted).

■ The VA characterized Dr. Chase's decision as an exercise of administrative discretion untainted by any prejudicial motives that may have been involved in prior discriminatory decisions by other VA officials. Nolan attempted to create an inference of discrimination based on the earlier conduct of Battista and Koseluk. Dr. Chase, as Chief Medical Director of the VA at the VA Central Office in Washington, D. C., was the ultimate supervisor of Battista and Koseluk who were located in California. Nolan asserted that these individuals worked closely together, but she did not provide specific factual evidence for her claim that this association supported an inference of discrimination. Koseluk had informed Dr. Chase about Nolan's original 1973 EEOC complaint in the fall of 1974, but there was no evidence that Battista or Koseluk made any recommendation with regard to Nolan's July 1975 leave request or influenced Dr. Chase's decision.

Dr. Chase testified that his decision to deny Nolan's leave request was based on legitimate business concerns. He weighed the utility to the VA of granting her request against the possibility that she might not return to VA service if the request was granted. Although Nolan had refused to report to the Palo Alto AHDT assignment, she had not formally requested reassignment to another VA position. In addition, Dr. Chase consulted the FPM regulations which did not provide for leave under Nolan's circumstances.

That a decision is in part subjective is not itself evidence of discrimination. Without such evidence, summary judgment is properly granted. Nolan's speculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact and, therefore, the district court's grant of summary judgment on the leave issue is affirmed.

2. *Discrimination claim concerning the voluntary nature of Nolan's resignation.*

■ The district court decided that as a matter of law Nolan's resignation was not involuntary or a constructive discharge and thus that she had waived her claims of unlawful discrimination by the VA. Nolan contended that there were genuine issues of material fact concerning whether her resignation was justified by acts of unlawful discrimination against her on a constructive discharge theory, which would entitle her to challenge the unlawful discrimination.

Although the district court stated that there is no clear standard for constructive discharge in a Title VII case, it relied on an approach that considers the totality of the circumstances and examines whether an employee was subjected to intolerable employment conditions or coerced to resign. *See Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975). In *Young*, the court stated:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encom-

passed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Id.*

Subsequent to the district court's decision in the instant case, the Fifth Circuit clarified the *Young* standard in *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61 (5th Cir. 1980). The Fifth Circuit adopted an objective standard stating that a constructive discharge exists when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* at 65, quoting *Alicia Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir. 1977); *see Meyer v. Brown & Root Construction Co.,* 661 F.2d 369, 372 (5th Cir. 1981); *Welch v. University of Texas,* 659 F.2d 531, 533 (5th Cir. 1981). In addition to setting forth such a reasonable man standard, the court in *Bourque* rejected arguments that an employee has to prove it was the employer's intent to force the employee to resign. *Bourque,* 617 F.2d at 65.[16] Nevertheless, the *Bourque* court stated that unlawful discrimination alone was insufficient for a constructive discharge finding. A single isolated instance of discrimination, such as unequal pay for equal work in *Bourque,* did not constitute an "aggravated situation" that would force a reasonable person to resign. *Id.* at 66. The court noted that continuing discrimination, *see Calcote v. Texas Educational Foundation,* 578 F.2d 95 (5th Cir. 1978), would provide such an aggravated situation. Finally, the court directed Title VII plaintiffs to remain on the job to mitigate damages from employment discrimination and resolve their complaints through existing employment relationships, unless such job presents "such an aggravated situation that a reasonable employee would be forced to resign." *Bourque,* 617 F.2d at 66.

The recent D. C. Circuit decision of *Clark v. Marsh,* 665 F.2d 1168 (D.C.Cir.1981), utilized this "aggravated situation" criteria and it provides helpful insight on the law of constructive discharge as it applies to Nolan's circumstances. In *Clark,* a continuous pattern of discriminatory treatment over a period of years constituted a sufficient aggravated situation for a constructive discharge finding. The D. C. Circuit agreed with *Bourque, supra,* that the mere fact of discrimination without some aggravating factors, *see Pittman v. Hattiesburg Municipal Separate School,* 644 F.2d 1071 (5th Cir. 1981), could not sustain a constructive discharge. Historic discrimination over a number of years provided the necessary aggravating factor in *Clark* to justify a constructive discharge and this factor was also present in Nolan's situation.

Nolan's VA career was punctuated with numerous adjudicated instances of discrimination which culminated in her departure from the VA. The first instance of discrimination was in June 1973 and initially deprived her from participating in the GEP. In February 1975, a senior VA official discriminatorily refused to provide her with necessary evaluations for VA assignments even though he was qualified to do so. Another VA official provided an inaccurate evaluation in February 1975 that was discriminatorily motivated. Finally, Nolan was assigned to a VA position in June 1975 that she had not requested and ordinarily was only assigned to applicants who had expressed a preference for such an assignment. This assignment was found to have been made for discriminatory-retaliatory purposes.

---

16. *See Wilkins v. University of Houston,* 654 F.2d 388, 390 (5th Cir. 1981) ("question is not whether the employer's purpose was to force the employee to resign"); *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071, 1077 (5th Cir. 1981) ("employee thus does not have to prove it was the employer's purpose to force the employee to resign"). *Contra, Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981) ("employer's actions must have been taken with the intention of forcing the employee to quit"); *Muller v. United States Steel Corp.,* 509 F.2d 923, 929 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975) (proof of a constructive discharge failed because of a "dearth of evidence to show a deliberate effort to make things difficult for the employee so as to bring about his separation").

It is our opinion that this history of unlawful discrimination provides sufficient aggravating factors that may have made Nolan's position intolerable and raises a genuine issue of material fact that a reasonable person would have felt compelled to resign under such circumstances. Therefore, we reverse the district court's grant of summary judgment on the resignation issue.[17]

B. *Adequacy of administrative remedy for other discrimination issues.*

■ The district court noted that the VA admitted discrimination against Nolan with respect to the evaluations by her supervisors and her assignment to the undesired AHDT position. The court declined to act on Nolan's motion for partial summary judgment on these claims, however, stating that the available remedies had been granted in the administrative proceedings or were moot. Nolan contended that these claims should have been heard by the district court because of an inadequate VA remedy. The VA argued that Nolan failed to state what further relief should be forthcoming. Although Nolan did not elaborate in detail the exact inadequacy of relief, she did reiterate in her brief the relief requested in her complaint of reinstatement, back pay, retroactive granting of leave, injunctive and declaratory relief, attorney fees, and costs.

We agree that no further relief can be granted on the discriminatory evaluations issue as such evaluations were ordered to be removed from Nolan's file. There likewise can be no further relief in the form of retroactive granting of leave in light of our ruling on the leave issue.

No administrative remedy was provided for the discriminatory AHDT assignment because Nolan's resignation was found to be voluntary by the EEO hearing examiner. The VA adopted such finding and the Board affirmed this decision. The district court agreed with this finding and concluded that the only remedies available for such discrimination were moot.

In light of our decision to remand the constructive discharge issue to the district court, we are not in a position to order any immediate relief on the AHDT assignment issue. We have held that this assignment contributed to a genuine issue of material fact concerning Nolan's constructive discharge claim. If the district court decides that there was a constructive discharge, relief granted by the district court will include a remedy for the discriminatory AHDT assignment. If the district court decides that there was no constructive discharge and Nolan's resignation was voluntary, the district court's mootness conclusion would be applicable.

C. *Summary judgment on the due process claim.*

■ The district court struck all of Nolan's jurisdictional allegations except Title VII because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Nolan argued that her second cause of action was not a discrimination claim, but a due process claim. She argued that

17. With our decision to reverse the district court's grant of summary judgment on the constructive discharge issue, we have implicitly agreed with the Fifth Circuit's rationale that an employer's intent need not be proven for a constructive discharge finding. *See* note 16, *supra.* The Ninth Circuit has cited *Young, supra,* and *Bourque, supra,* for the proposition that unequal pay, without evidence of other circumstances indicating difficult or intolerable working conditions, cannot support a constructive discharge finding. *Heagney v. University of Washington*, 642 F.2d 1157, 1166 (9th Cir. 1981). However, *Heagney* does not clearly state whether an employer's purpose to intentionally coerce an employee to resign must be demonstrated. As the Fifth Circuit stated in *Bourque*, a stringent requirement that an employer's intent be shown "is inconsistent ... with the realities of modern employment." 617 F.2d at 65. Such a rule would require an analysis of an employer's subjective state of mind, as opposed to the objective analysis of alleged intolerable working conditions that compelled the employee to resign which we feel is the more appropriate focus in a constructive discharge action.

her involuntary resignation was caused by the VA's deceit, coercion, and duress which constituted a taking of a property interest. *See Christie v. United States*, 518 F.2d 584 (Ct.Cl.1975).

Nolan initiated her due process claim at the administrative level as an adverse action under FPM § 752. Nolan was advised that 5 CFR § 772.306(a)(2) prohibited an employee from concurrently pursuing a FPM § 713 appeal, which encompassed her EEO complaints, and a FPM § 752 appeal. In light of Nolan's three pending EEO complaints pursuant to FPM § 713, Nolan elected to proceed with her FPM § 713 appeal and was notified that her FPM § 752 adverse action was cancelled. However, 5 CFR § 772.306(a)(2) provided that the substance of the adverse action claim would be considered in the review of the EEO claims.

Therefore, although Nolan's action in the district court for a *de novo* review of the administrative determination may have properly placed Nolan's due process claim before the district court, we nevertheless agree with the district court's action in striking the due process claim. The holding of *Brown, supra*, is controlling on this issue and we feel that such holding cannot be circumvented where the factual predicate for Nolan's due process claim is the discrimination which is the basis of her Title VII claim.[18] The threshold question in Nolan's action is the constructive discharge claim and she would not be able to recover on the due process claim if she were successful on the constructive discharge claim due to the identical factual basis, and, therefore, the district court correctly dismissed the due process count and approached the action solely as a Title VII action pursuant to *Brown, supra*.

### III. CONCLUSION

The district court order of summary judgment in favor of the VA on Nolan's con-

structive discharge claim is reversed and remanded to the district court for further proceedings. The district court's order is affirmed in all other respects.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**18.** The holding of *Brown* is also controlling on Nolan's arguments that the district court erred in dismissing her jurisdictional allegation under Executive Order 11478 and Dr. Chase as a party defendant. Executive Order 11478 does not provide jurisdiction exclusive of Title VII, and Title VII provides that the proper defendant shall be "the head of the department, agency, or unit". 42 U.S.C. § 2000e–16(c). The district court correctly decided that Joseph Maxwell Cleland, Administrator of the VA, was the only proper defendant.