766 F.2d 1358
 38 Fair Empl.Prac.Cas. 808,
37 Empl. Prac. Dec. P 35,469
Lowene R. CLEMENTE, Plaintiff/Appellee,
v.
UNITED STATES of America, United States Air Force, a
military department of the United States of America, with
Verne Orr, Secretary of the United States Air Force, Ronald
J. Bishop, Jr., Harold L. Pray; Charles L. Brower Phillip
G. Seneschal; Harry W. Johnston; and Jeffrey W. Cook,
Defendants/Appellants.
Lowene R. CLEMENTE, Plaintiff/Appellee,
v.
UNITED STATES of America, United States Air Force, a
military department of the United States of America, with
Verne Orr, Secretary of the United States Air Force, Ronald
J. Bishop, Jr., Harold L. Pray; Charles L. Brower Phillip
G. Seneschal; Harry W. Johnston; and Jeffrey W. Cook,
Defendants/Appellants.
Lowene R. CLEMENTE, Plaintiff/Appellee,
v.
UNITED STATES DEPARTMENT of the AIR FORCE and Verne Orr,
Secretary of the United States Department of the
Air Force, Defendants/Appellants.
 Nos. 83-6187, 83-6188 and 83-6430.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1984.
Decided July 24, 1985.
 
 S. Timothy Buynak, Jr., Hatch & Parent, Santa Barbara, Cal., for plaintiff/appellee.
 Kevin M. Grile, American Federation of Government Employees, AFL-CIO, Northfield, Ill., Amicus Curae, for American Federation of Government Employees.
 Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Robert C. Bonner, U.S. Atty., Los Angeles, Cal., Barbara L. Herwig, Edward R. Cohen, Attys., Dept. of Justice, Washington, D.C., for defendants/appellants.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY, CANBY and NORRIS, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Plaintiff, a white civilian Air Force employee, brought an employment discrimination action after an Air Force "reduction in force" (RIF) resulted in her reassignment. She also asserted due process violations arising out of the alleged failure of Air Force officials fully to process her discrimination claims.
 
 
 2
 Defendants challenge the district court's rulings that plaintiff: (1) had demonstrated retaliatory discrimination entitling her to back pay and "seniority relief;" and (2) had established a violation of her administrative due process rights entitling her to "Bivens-type" compensatory and punitive damages against the United States, the U.S. Air Force, the Secretary of the Air Force, and named Air Force officers and employees. Defendant Secretary of the Air Force also challenges an order of the district court holding the Secretary in contempt. We reverse the judgment for damages and vacate the contempt order.
 
 BACKGROUND[1]
 
 3
 Plaintiff Lowene Clemente, a civilian Air Force employee, originally filed an action in district court alleging (1) reverse racial discrimination; (2) coercive and retaliatory measures taken against her for filing administrative claims; (3) denial of reemployment priority rights; and (4) improper implementation of a reduction in force. The complaint was an outgrowth of an EEO proceeding which began in 1977, when Clemente appealed her RIF reassignment, on race discrimination and other grounds, to the Federal Employee Appeals Authority (FEAA).
 
 
 4
 The FEAA notified the Air Force that under applicable Civil Service regulations, two alternative methods were available to process Clemente's appeal: that set forth in 5 C.F.R. Part 351 or that in 5 C.F.R. Part 713.[2] A further regulation then in effect provided that
 
 
 5
 If the appellant has not been informed of the separate rights of appeal, the Appeals Authority shall refer the matter to the agency so the agency may explain the alternative rights of appeal to the appellant as provided in Sec. 713.236 of Part 713 of this chapter and afford him the opportunity, if appropriate, to elect the avenue of appeal he wishes to pursue.
 
 
 6
 5 C.F.R. Sec. 772.306(a) (1977). The FEAA requested the Air Force to secure plaintiff's election in writing. Clemente was contacted by a representative of her employing facility, Vandenberg Air Force Base, and informed of the two options. On advice of counsel, she failed to respond.
 
 
 7
 Meanwhile, the FEAA sent two letters to Vandenberg in an effort to ascertain the appellate option Clemente had elected. Upon notification by Vandenberg that no response had been received to its letter requesting an election, the FEAA notified Clemente's counsel that her "Part 351" appeal had been cancelled.
 
 
 8
 Shortly thereafter, Clemente secured new counsel. Her new attorney promptly wrote the FEAA and Vandenberg, informing each that Clemente assumed that her Part 713 appeal was still being processed. The FEAA's response noted that the Part 351 appeal had been cancelled, and the Part 713 appeal was to be handled by officials at Vandenberg.
 
 
 9
 Under Air Force regulations,
 
 
 10
 If the complainant elects to proceed under FPM Chapter 713, after having been specifically informed of his right to use the other appellate system, then the entire matter, including the merits of the action, will be reviewed under this regulation.
 
 
 11
 AFR 40-713, p 33 (emphasis added). Pursuant to this regulation, an EEO counselor was assigned to interview Clemente and explore her RIF and discrimination claims. After the interview, Clemente was notified of her right to file a formal discrimination complaint, and she did so. This formal complaint was rejected by the Air Force as untimely. Her initial complaint in district court followed.
 
 
 12
 In April 1980, the district court issued a decision. Finding a failure by the Air Force properly to process Clemente's complaints, the court remanded the "complaints of plaintiff as presented herein" to Vandenberg AFB "for continuous and diligent administrative processing by the Defendants under applicable Air Force regulations." 568 F.Supp. at 1156. The court admonished that "[s]aid processing should be accomplished in strict compliance with applicable Air Force regulations, should involve all stages of administrative processing entailed therein, and should be conducted so as to insure Plaintiff her full rights in said proceedings and a fair adjudication of her complaints." Id.
 
 
 13
 Following the district court's remand and this court's unpublished opinion dismissing defendants' appeal for lack of finality, Clemente v. United States, 667 F.2d 1030 (9th Cir.1981), defendant Johnstone was appointed by the Air Force to investigate Clemente's claims. In an initial meeting, Clemente and her counsel presented Johnstone with an outline of Clemente's complaints and administrative processing expectations. Johnstone responded that he could only process the discrimination claim. An exchange of correspondence followed in which Clemente's counsel emphasized his disagreement with the limitations placed on the scope of the investigation and the processing steps undertaken, insisting that such limitations were violative of the court's April remand order. By letter, Johnstone informed Clemente's counsel that the court had only remanded the discrimination claim, that it was not his responsibility to define the issues accepted for investigation, and that he had received nothing from the Air Force indicating that he should broaden the scope of his investigation.
 
 
 14
 Shortly thereafter, Clemente's counsel arranged a meeting with defendant Brower, Vandenberg's Legal Officer for Labor Relations, and defendant Seneschal, Vandenberg's Civilian Personnel Officer. The parties discussed the appropriate processing of Clemente's RIF appeal, her priority reemployment rights claim, and the reprisal charges. Clemente's counsel made a request that the Air Force produce certain documents. Soon afterward, Seneschal sent Clemente's counsel a letter indicating, inter alia, that Clemente's document requests would be honored.
 
 
 15
 Several weeks later, defendant Brower informed Clemente's counsel that Air Force headquarters had determined that no further processing could be provided either through the Air Force or the FEAA's successor organization, the Merit Systems Protection Board (MSPB).[3]
 
 
 16
 That same day, Clemente's counsel wrote Johnstone complaining that none of Clemente's witnesses had received interrogatories or been contacted, interrogatories had not been sent to Clemente's counsel for review as previously agreed, and the request for documents was still outstanding. Johnstone never answered this letter, and the processing deficiencies referred to remained unremedied. One week later, Johnstone forwarded a report to Vandenberg's base commander finding no discrimination. Thereafter, Brower reconfirmed to Clemente's counsel that there would be no further processing of her claims.
 
 
 17
 One month later, defendant Pray, Chief of Personnel at Vandenberg, issued a "Notice of Proposed Disposition of Discrimination Complaint" recommending cancellation of Clemente's complaint. Upon receipt of this notice, Clemente's counsel wrote Pray alleging deficiencies in the Air Force's processing of her claims, and requesting combined adjudication of all four issues. His letter--copies of which went to Brower and defendants' attorney--cited Air Force regulations, the purported constitutional rights of plaintiff, and the court's remand judgment. A similar letter was sent directly to defendants' attorney, again detailing alleged deficiencies in the Air Force's processing of plaintiff's claims, and stressing that this failure "diligently, promptly, and completely [to] process Mrs. Clemente's claims" thereby "perfect[ed] causes of action for constitutional violations against the Air Force as well as any governmental official responsible for these actions." 568 F.Supp. at 1158.
 
 
 18
 Several weeks later, defendant Bishop, base commander at Vandenberg, issued a "Notice of Final Decision" cancelling Clemente's complaint, but asserting that the Air Force had made a "good faith attempt" to comply with the court's April remand judgment.
 
 
 19
 Clemente thereupon reopened proceedings in the district court and amended her initial complaint to include a due process claim against the United States and individual defendants. The due process claim was predicated upon the Air Force's refusal to follow its own procedures, its refusal to process three of Clemente's four administrative claims, and its perfunctory processing of the discrimination complaint.
 
 
 20
 Following a bench trial, the district court found that while plaintiff had not suffered racial discrimination, the evidence was sufficient to establish retaliation in violation of Title VII. The court awarded back pay and accorded seniority relief (with training, if necessary). In ruling on the constitutional claim, the court found that both the United States and the individual defendants had violated Clemente's due process rights, and awarded compensatory and punitive damages accordingly. The district court also awarded plaintiff attorneys' fees on both of her successful claims. Subsequently, the district court held the Secretary of the Air Force in contempt of the order granting relief to plaintiff on the merits. These consolidated appeals of the district court's orders followed.
 
 DISCUSSION
 I. Plaintiff's Constitutional Claim
 A. United States as Defendant
 
 21
 In addition to finding liability by individual defendants, the district court awarded "Bivens- type" compensatory and punitive damages against the United States and the United States Air Force absent an express waiver--and despite the spirited assertion--of sovereign immunity. 568 F.Supp. at 1171. We reverse.
 
 
 22
 The district court viewed its order awarding damages directly against the United States as "the natural and logical extension" of Supreme Court precedent recognizing and extending liability for so-called constitutional torts. 568 F.Supp. at 1167. Relying upon both Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and subsequent cases concerning the scope of 42 U.S.C. Sec. 1983,[4] the district court held that[n]ot overlooking the fact that the Owens [sic] decision addressed the issue of a municipality being held liable in a Sec. 1983 action, the issue of a federal sovereign violating its own Constitution is indistinguishable. Accordingly, this Court finds that the federal government is not immune from an action brought against it as a result of its agents having violated the Fifth Amendment rights of a United States citizen.... We cannot help but recognize and enforce the natural and logical extension of Butz and Owens [sic], which leads us inescapably to conclude that just as state agencies and state officers are both liable for constitutional violations under 42 U.S.C. Sec. 1983, so also federal agencies and federal officers should be and are liable for constitutional violations under Bivens.
 
 
 23
 568 F.Supp. at 1167 (emphasis in original).
 
 
 24
 We cannot accept the district court's proposition that Bivens and Owen logically compel the United States to be held liable in damages for the constitutional torts of its officers.[5] "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Admittedly, there is considerable appeal to the proposition that a remedy for a constitutional violation ought not to be defeated by the common law doctrine of sovereign immunity.[6] We consider the issue foreclosed against plaintiff, however, by a long line of Supreme Court cases, see, e.g., Hill v. United States, 50 U.S. (9 How.) 409, 413, 13 L.Ed. 185 (1850); United States v. Lee, 106 U.S. (16 Otto) 196, 207, 1 S.Ct. 240, 249, 27 L.Ed. 171 (1882); Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 388, 59 S.Ct. 516, 517, 83 L.Ed. 784 (1939); Mitchell, supra. The proposition is also contrary to the implication of our own decision in Holloman v. Watt, 708 F.2d 1399, 1401-02 (9th Cir.1983), where we held a Bivens remedy unavailable against federal officials being sued, not in their individual capacity for their individual actions, but simply because of the offices they hold. See also Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir.1984). It follows that the district court's award of compensatory and punitive damages against the United States and the United States Air Force must be reversed.
 
 B. Individual Officials as Defendants
 
 25
 In awarding Bivens damages against individual defendants, the district court held that the failure of defendants fully to process Clemente's discrimination claims violated her right to due process as secured by the fifth amendment. Defendants contend that even if plaintiff's Bivens claims are not precluded by Title VII,[7] they must fail because (1) civil service administrative remedies provide the relief for an alleged deprivation of protected civil service statutes, and (2) plaintiff has not otherwise demonstrated a deprivation of liberty or property sufficient to implicate the due process clause. We agree with both of the defendants' contentions.
 
 
 26
 To the extent that the district court based its due process Bivens ruling on plaintiff's property interest in her "GS-7 position," 568 F.Supp. at 1168, it is contrary to the Supreme Court's decision in Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983). There, the Court held that the comprehensive system established by Congress to remedy violations of constitutional rights in connection with federal employment and personnel policy was exclusive; it could not be augmented by non-statutory "Bivens-type" relief. Bush v. Lucas accordingly precludes Bivens relief based directly on injury to plaintiff's interest in her GS-7 position.
 
 
 27
 The district court purported, however, to find an independent property interest arising from the court's order to process plaintiff's complaint fully. See, e.g., 568 F.Supp. at 1164, 1168 and 1169. A mere command to follow certain procedures, however, does not create an underlying property interest, even when the command is derived from the Constitution. Such an interest must be "created by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The district court's order creates no such property interest. While violation of the order might constitute contempt, it does not give rise to a Bivens constitutional tort claim.
 
 
 28
 The district court also grounded its finding of a deprivation of due process in the Air Force's failure to follow its own regulations:
 
 
 29
 The Air Force established procedures for evaluating combined RIF appeals and discrimination complaints as well as complaints of reprisal and reemployment priority rights. See AFR 40-713.... Having once established these procedures, they must be followed or plaintiff's due process rights will be violated.... The Air Force, however, repeatedly failed to abide by these procedures....
 
 
 30
 568 F.Supp. at 1168.
 
 
 31
 Notwithstanding this finding that the Air Force failed fully to follow its own regulations, such procedural requirements, without more, do not create constitutionally cognizable property interests. To hold otherwise would immediately incorporate virtually every regulation into the Constitution.[8] This court has repeatedly held that[p]rocedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest. A constitutionally protected interest has been created only if the procedural requirements are intended to be a 'significant substantive restriction' on ... decision making. If the procedures required pose no significant limitation on the discretion of the decision maker, the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures.
 
 
 32
 Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984) (citations omitted); see also Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1315 (9th Cir.1984); Parks v. Watson, 716 F.2d 646, 657 (9th Cir.1983); Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.1980); Hayward v. Henderson, 623 F.2d 596, 597 (9th Cir.1980); Russell v. Landrieu, 621 F.2d 1037, 1040 (9th Cir.1980).
 
 
 33
 Here, AFR 40-713 expressly provided for review of "the entire matter, including the merits of the action," once a complainant elects to proceed under Part 713. The outcome of that review, however, is left to the discretion of the base commander.[9] Although the commander's decision is appealable to the Civil Service Commission or the courts, A.F.R. 40-713, paragraphs 28 & 29, the regulation provides no significant restrictions on the commander's decision-making, Goodisman, 724 F.2d at 820, nor does it provide articulable standards to guide his discretion. Parks, 716 F.2d at 657. As a result, plaintiff cannot successfully claim a constitutionally cognizable property interest arising from the Air Force's regulation.
 
 
 34
 None of the foregoing should be read as abrogating the well-settled rule that regulations validly prescribed by an agency are binding upon it.[10] See, e.g., Accardi v. Shaughnessy, 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954); United States v. Newell, 578 F.2d 827, 834 (9th Cir.1978); Mendez v. INS, 563 F.2d 956, 959 (9th Cir.1977); Mabey v. Reagan, 537 F.2d 1036, 1042 (9th Cir.1976); Note, "Violations by Agencies of their Own Regulations," 87 Harv.L.Rev. 629 (1974). Our holding is simply that plaintiff has failed to demonstrate the existence of a constitutionally protected "property" interest, deprivation of which would entitle her to damages. See Hayward v. Henderson, 623 F.2d 596, 598 (9th Cir.1980).
 
 
 35
 Much of what we have just said applies as well to plaintiff's alleged liberty interest. Clemente does not possess a "liberty interest [in] her Civil Service career." 568 F.Supp. at 1168. The mere fact of dismissal does not cause a deprivation of liberty. Loehr, 743 F.2d at 1310, 1317 (citing Roth, 408 U.S. at 575, 92 S.Ct. at 2708; Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) ). Instead, " '[t]o implicate constitutional liberty interests, ... the reasons for dismissal must be sufficiently serious to "stigmatize" or otherwise burden the individual so that he is not able to take advantage of other employment opportunities.' " Id. (citing Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1101 (9th Cir.1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982) ). No such stigmatization has been shown here. The district court's decision awarding Bivens relief against the individual defendants must accordingly be reversed.
 
 II. Title VII
 
 36
 Appellants contend that the district court applied the wrong legal standard in holding that plaintiff had been a victim of retaliation forbidden by Title VII. We agree.
 
 
 37
 This court has held that "[o]nce the plaintiff has established a prima facie case, the burden of production devolves upon the defendant to articulate some legitimate, non-retaliatory reason for the adverse action. The defendant need not prove the absence of retaliatory intent or motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the plaintiff. If the defendant meets this burden, the plaintiff must then show that the asserted reason was a pretext for retaliation. The ultimate burden of persuading the court that the defendant unlawfully retaliated against her remains at all times with the plaintiff." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796-97 (9th Cir.1982) (citations omitted).
 
 
 38
 We find no indication in the district court's findings or opinion that it afforded the defendants the full benefit of this process. The Air Force offered non-retaliatory explanations for its actions but the district court, except for rejecting the Air Force's jurisdictional points, did not address them. Because they were not addressed, there was no consideration of the question whether they were pretextual. The full trial process envisaged by Cohen was consequently short-circuited, and plaintiff was essentially awarded a judgment on the strength of her prima facie case[11] that the defendants had an inadequate opportunity to rebut.
 
 
 39
 Because the district court neither applied the appropriate legal standards nor "articulate[d] the standards by which it evaluated the evidence and arrived at its finding of liability," id. at 797, its finding of retaliation is reversed and the issue remanded for reconsideration in light of the applicable precedent. Id. at 798.[12]
 
 III. Attorneys' Fees
 
 40
 The district court awarded attorneys' fees and costs against the United States in connection with Clemente's constitutional claims. 568 F.Supp. at 1171. The predicate for an award of fees under 28 U.S.C. Sec. 2412 (EAJA), however, is that the party seeking the award "prevailed." Since the district court incorrectly found Bivens liability against the United States absent an express waiver of sovereign immunity, we vacate this award of fees and costs.[13]
 
 
 41
 Under 42 U.S.C. Sec. 2000e-5(k), attorneys' fees are available to the prevailing party in a Title VII action. Since we have remanded on the issue of retaliation, we also vacate the award of attorneys' fees under Title VII pending reconsideration of the retaliatory discrimination issue by the district court.
 
 IV. Contempt
 
 42
 The district court entered its judgment in this action on August 12, 1983. See 568 F.Supp. at 1150. On October 3, it found defendants Secretary of the Air Force and Department of the Air Force guilty of civil and criminal contempt for deliberately and contemptuously disobeying its order of August 12. The district court assessed cumulative fines of over $2,000 per day from the entry of judgment in August through October 3. Appellants contend that the court abused its discretion in this regard. We agree.
 
 
 43
 "Where ... a judgment of contempt contains an admixture of criminal and civil elements, 'the criminal aspect of the order fixes its character for purposes of procedure on review.' " Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir.1983). To sustain a judgment of criminal contempt, willful disobedience must be proved beyond a reasonable doubt. Id. at 782. "Willfulness" means, in this context, a deliberate or intended violation of the court's order. Id.
 
 
 44
 As the government notes, the sequence of events here alone is sufficient to establish that defendants were not in willful disobedience of the district court's August 12 order. Ten days after the order was entered, defendants filed their notice of appeal, and, on August 23, immediately upon expiration of the automatic stay provided by F.R.Civ.P. 62(a), defendants moved in the district court for a stay of the judgment. While that motion was still before it, the district court issued, on September 23, an order to show cause why defendants should not be held in contempt. Finally, on October 3, the district court simultaneously held defendants in contempt and denied their motion for a stay pending appeal.
 
 
 45
 As appellants suggest, to find a defendant guilty of "willful and deliberate defiance of the court's order," United States v. United Mine Workers, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 9 L.Ed. 884 (1947), when a stay has been immediately sought would render meaningless the whole process by which parties invoke the power of the courts to defer the effect of their judgments. The Supreme Court has recognized that "willfulness" may be qualified "by a concurrent attempt on defendants' part to challenge the order by motion to vacate or other appropriate procedures." United Mine Workers, 330 U.S. at 303, 67 S.Ct. at 701. Appellant's motion to stay was an "appropriate procedure." Accordingly, we vacate the judgment of contempt.
 
 CONCLUSION
 
 46
 The judgment of the district court in favor of plaintiff is in all respects reversed. The rulings of the district court holding the Secretary and the Department of the Air Force in contempt are vacated. The case is remanded to the district court for further proceedings relating to plaintiff's claim for retaliation in violation of Title VII, and any other matters consistent with this opinion.[14]
 
 
 
 [1]
 The facts in this case are more fully set forth in the opinion of the district court. See Clemente v. United States, 568 F.Supp. 1150, 1152-59 (C.D.Cal.1983)
 
 
 [2]
 Part 351, captioned "Reduction in Force," specifies the procedures "[e]ach agency shall follow ... when it releases a competing employee from his competitive level by separation, demotion, furlough ..., or reassignment...." 5 C.F.R. Sec. 351.201(a) (1977)
 Part 713 "sets forth the regulations under which an agency shall establish a continuing affirmative program for equal opportunity in employment and personnel actions ... and under which the Commission will review an agency's program and entertain an appeal from a person dissatisfied with an agency's decision or other final action on his complaint of discrimination...." 5 C.F.R. Sec. 713.201(a) (1977).
 
 
 [3]
 The Air Force claimed that plaintiff's appeal was an FEAA appeal, and there was no saving clause allowing the MSPB to assume appeals before the now-disbanded FEAA. Thus, argued the Air Force, only the discrimination complaint could be processed administratively
 
 
 [4]
 In Bivens, the Supreme Court implied a damage remedy against federal officers for the violation of plaintiff's fourth amendment rights. 403 U.S. at 390-97, 91 S.Ct. at 2001-05. The Bivens doctrine has been progressively expanded to embrace other constitutional violations. See Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); see generally K. Davis, Administrative Law Treatise, Sec. 27:26 (1984). In Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court declined to "accord[ ] to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for the identical violation under Sec. 1983." Id. at 500, 98 S.Ct. at 2907. In Owen v. City of Independence, Missouri, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Court extended liability for constitutional violations under Sec. 1983 to municipalities
 
 
 [5]
 First, the rationale for abrogating municipal immunity in Owen is simply inapposite. As the Court was careful to make clear, "[s]ince colonial times, ... local governmental units were regularly held to answer in damages for a wide range of statutory and constitutional violations...." Owen, 445 U.S. at 638-39, 100 S.Ct. at 1409. The same is not true of the federal sovereign. See note --- infra ; Borchard, "Government Liability in Tort," 34 Yale L.J. 1 (1924). Second, the governmental immunity at stake in Butz and Bivens differs from that at issue here. The district court's order permits recovery for damages from the United States; while Bivens and Butz permit recovery against governmental officials sued in their individual capacities; neither case contemplates damages against the government itself. See Owen, 445 U.S. at 638 n. 18, 100 S.Ct. at 1409 n. 18. Indeed, as the Court acknowledged in Butz, "Bivens established that a citizen suffering a compensable injury to a constitutionally protected interest could ... obtain an award of monetary damages against the responsible federal official " precisely because "[t]he barrier of sovereign immunity is frequently impenetrable." 438 U.S. at 504, 98 S.Ct. at 2909 (emphasis added)
 
 
 [6]
 At least one commentator has urged the Supreme Court to extend Bivens to constitutional violations by the government. See K. Davis, Administrative Law Treatise, Sec. 27:26, at 147 & 154 ("Nothing in the Bivens opinion limits the doctrine to a case in which federal employees are the defendants. The theory of the opinion is broad enough to produce the same result if ... the defendant is the United States or a local government.... The Supreme Court should ... make clear that any violator of the Constitution is liable for damages in a suit directly under the Constitution.") (emphasis omitted). See also Borchard, "Government Liability in Tort," 34 Yale L.J. 1 (1924) (classic attack on the doctrine of federal sovereign immunity); W. Blackstone, 3 Commentaries 23, 109, quoted in Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 2408 n. 10, 76 L.Ed.2d 648 (1983) ("every right, when withheld, must have a remedy, and every injury its proper redress.")
 
 
 [7]
 To the extent that plaintiff's Bivens claims are founded in actions proscribed by Title VII, they may not be maintained because Title VII provides the exclusive remedy. Brown v. GSA, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); White v. GSA, 652 F.2d 913, 917 (9th Cir.1981); see Nolan v. Cleland, 686 F.2d 806, 815 (9th Cir.1982)
 
 
 [8]
 "It goes without saying that it would be neither sound law nor desirable policy to constitutionalize every state ... regulation." Wakinekona v. Olim, 664 F.2d 708, 712 n. 4 (9th Cir.1981), rev'd on other grounds, Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). See also Shango v. Jurich, 681 F.2d 1091, 1101 (7th Cir.1982) ("Constitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself. The purpose of a procedural safeguard, however, is the protection of a substantive interest to which the individual has a legitimate claim of entitlement.")
 
 
 [9]
 See A.F.R. 40-713, paragraphs 12(f), 24(c)(6), 25(b) (Oct. 20, 1975) (superseded by A.F.R. 40-713 (June 15, 1982) )
 
 
 [10]
 As Justice Frankfurter observed, "[a]n executive agency must be rigorously held to the standards by which it professes its action to be judged. Accordingly, if [agency action] is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed. This judicially evolved rule of administrative law is now firmly established and, if I may add, rightly so. He that takes the procedural sword shall perish by that sword." Vitarelli v. Seaton, 359 U.S. 535, 546-47, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012 (1959) (Frankfurter, J., concurring in part and dissenting in part). To "perish" by the procedural sword, however, is not to pay Bivens damages. The appropriate remedy for the refusal of an agency to follow its own regulations may be injunctive relief, reversal of the agency action, or reversal and remand with an order requiring the agency to follow its own procedures. Indeed, the district court's initial remand required appellants diligently to process all of plaintiff's claims. 568 F.Supp. at 1156. Willful failure to do so would arguably support a finding of contempt; it does not, however, permit Bivens damages
 
 
 [11]
 We note as well that the district court erred in its articulation of the requisites of a prima facie case of retaliation. The district court stated that a prima facie case is established by showing knowledge by the employer that a complaint has been filed, followed by adverse employment action. 568 F.Supp. at 1160. The standard established by Cohen, however, requires the showing of a causal link between the protected activity and the adverse action, by "evidence sufficient to raise the inference that [plaintiff's] protected activity was the likely reason for the adverse action." Cohen, 686 F.2d at 796
 
 
 [12]
 Our remand makes it unnecessary to reach appellants' contention that the district court erred in excluding testimony essential to an accurate calculation of back pay and seniority rights. We note, however, that the central objective of Title VII is to "make whole" victims of prohibited discrimination. See Franks v. Bowman Transportation Co., 424 U.S. 747, 774, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444 (1976). Toward that end, a court may certainly weigh expert testimony suggesting what plaintiff would have earned on the basis of hypothetical promotion schedules. When an expert, however, is asked to assume that plaintiff would occupy a particular position but for improper retaliatory actions, any correspondence between the expert's calculations and the actual salary loss suffered by plaintiff obviously will depend upon the accuracy of this assumption, an assumption which defendants are entitled to attempt to refute. Finally, we note that damages under plaintiffs Title VII claim must be confined to those caused by unlawful retaliation, if retaliation is proved upon remand. The district court found against plaintiff on her cause of race discrimination
 
 
 [13]
 Our disposition of the sovereign immunity issue makes it unnecessary to reach appellants' additional contention that an award of fees and costs would be unwarranted under the EAJA in any event. We note, however, that the district court expressly relied upon "the decision of Lauritzen v. Secretary of the Navy, 546 F.Supp. 1221 (C.D.Cal.1982), for the proposition than an award of attorneys fees in a Bivens action may be analogized to a similar award in a Sec. 1983 action which is authorized by 42 U.S.C. Sec. 1988." 568 F.Supp. at 1171. This court recently reversed that decision on precisely this point. Lauritzen v. Lehman, 736 F.2d 550, 554-55 (9th Cir.1984)
 
 
 [14]
 In her amended complaint, plaintiff asserted a claim that the RIF to which she was subject was conducted in violation of pertinent statutes and regulations. The district court made no rulings regarding that claim, probably because relief therefor would have been subsumed in the relief it ordered on the Title VII and constitutional claims. We also do not reach the merits of that claim, which may be addressed by the district court on remand. We express no opinion as to whether that claim is in fact independent of any of plaintiff's other claims. Cf. Nolan v. Cleland, 686 F.2d 806, 815 (9th Cir.1982) (constitutional due process claim subsumed by Title VII claim when factual predicate is same)